SELLERS *v.* STATE.

Opinion delivered June 21, 1909.

1.  EVIDENCE—PHOTOGRAPH—It was error in a murder case to admit in evidence a photograph which purports to show the situation of the parties and the place and conditions connected with the final rencounter unless such photograph is verified by some witness in the case. (Page 178.)

2.  SAME—GENERAL OBJECTION.—A general objection to a photograph as evidence is sufficient to raise the question of its relevancy. (Page 179.)

Appeal from Saline Circuit Court; *William H. Evans,* Judge; reversed.

STATEMENT BY THE COURT.

The appellant was indicted for the crime of murder in the first degree, was tried and convicted of voluntary manslaughter. Appellant killed one Bus Lawhorn in Saline County, Arkansas, April 13, 1908. Lawhorn was living with his mother on her farm, and appellant was a tenant. On the late afternoon before the tragedy, appellant and Mrs. Lawhorn had a quarrel about supplies. The next morning appellant with one Dowdy went to Mrs. Lawhorn's, and she describes what there took place as follows:

"They went into the lot in the usual way and started to catch the mules to go to plowing. My son told Mr. Sellers that it was too wet to plow. Mr. Sellers made some reply, I do not know what, and my son again told him that it was too wet to

plow, and they began cursing each other. My son rushed toward
the lot gate toward Mr. Sellers, when Mr. Sellers drew a pistol
and fired at my son. My son threw his hands to his breast and
bent forward, and just as he straightened up the defendant shot
at him again. There were but four shots fired. After the first
shot Mr. Sellers stooped down by the fence and continued firing.
My son was killed and fell just on the inside of the yard. My
son had no pistol, and did no firing."

Other witnesses for the State, who were not present but
heard the firing, and who were on the ground immediately after
the killing, described the condition of the body, wounds, etc.,
and the bullet marks left on the plank and post of the fence.

The record shows the following: Witness Ed Reymo tes-
tified as follows: "I am a photographer. I was employed to
make photographs showing the situation of the premises where
Bus Lawhorn was killed. These photographs were the ones
that I took. (Here the defendant objects to the photographs be-
ing introduced in the evidence.) I was employed by the relatives
of the deceased to take these pictures. The defendant was not
present, and had no representative there. I was not present at
the killing, and did not know about the situation except as I
was told. After taking the pictures I retouched them, that is I
marked them with pencil so that they would show more plainly
the marks on the fence and the bullet hole in the post. In some
instances I retouched the bullet holes, that is, painted them with
my pencil before taking the pictures, and in another instance we
retouched the picture after it was made. (The court overrules
the objection of the defendant as to the pictures and permits pic-
tures marked "A," "B" and "C" to be introduced in evidence and
to be considered with the other evidence to show the location in
this case where it is alleged that the killing occurred, the posi-
tion that it is claimed by the State that the parties were at the
time, to which ruling of the court the defendant at the time ex-
cepted and asked that his exceptions be noted of record, which
was accordingly done.) These pictures were taken sometime
after the killing occurred. I do not know just how long. The
pictures show the marks that were on the fence there at the
time. Also the bullet hole in the post. (Defendant asked to have
this evidence of the witness, as well as the pictures themselves,

excluded from the jury, which was overruled by the court, to
which the defendant excepted, and asked that his exceptions be
noted of record, which was accordingly done.)"

On behalf of appellant witness Dowdy, who was present
when appellant and Mrs. Lawhorn had the quarrel the day before
the killing and also at the time of the killing, testified that Mrs.
Lawhorn said to appellant in the quarrel that "he was trifling and
worthless, and that she would have her sons kill him before the
sun was two hours high next morning." He then proceeds in
part as follows: The next morning Mr. Sellers and I went up
to Mrs. Lawhorn's to go plowing. We entered the lot on the
east side at the gate where we usually went in. We had started
to catch the mules. I was a little way ahead of Mr. Sellers, and
as we started to catch the mules Bus Lawhorn said it was too wet
to plow. Mr. Sellers did not seem to understand what he said,
and asked him what he said, and he said that it was too wet to
plow, and began cursing Mr. Sellers, and ran toward him and
threw the lot gate open and fired twice at Mr. Sellers. Mr. Sell-
ers did not see him when he first threw the pistol on him, and I
called Mr. Sellers's attention to it, and told him to look out there,
and just as he looked around Bus Lawhorn fired. Fired twice
in rapid succession, and then Mr. Sellers ran up to him and
begged him to stop shooting. Mr. Sellers pushed him back into
the yard and then stooped down behind the fence, or rather the
gate post, and the deceased stuck his pistol around the gate post
as though he were going to shoot at Sellers again. At that time
Mr. Sellers began shooting and there were several shots fired.
I do not know just how many. After the last shot Bus Law-
horn fell inside of the yard, and when he fell he dropped his
pistol."

The appellant's testimony as to the circumstances of the
killing is substantially the same as that of witness Dowdy.

*W. R. Donham,* for appellant.

The court erred in admitting the photographs in evidence.
75 Miss. 721; 23 So. 710. There was no evidence showing they
truly represented the objects and situation portrayed. They pre-
judiced the minds of the jury.

*Hal L. Norwood,* Attorney General, *C. A. Cunningham,*
Assistant, and *Frank Pace,* for appellee.

1. As a general rule, photographs are admissible when shown to be accurate and correct representations of the matter in controversy and throw light on it. 9 Enc. of Ev., 771; Wharton's Cr. Ev., (8 Ed.) § 544; 118 Mass. 420; 31 Wis. 512; Underhill, Cr. Ev., 62; 149 N. Y. 580; 126 Mo. 597; 48 Pac. 75; 162 U. S. 613.

2. They were not prejudicial. They imparted to the jury a view of the premises and the physical evidences of the conflict. 83 Ga. 92 (9 S. E. 768); 126 Mo. 597 (29 S. W. 577); 111 N. Y. 362 (19 N. E. 54); Underhill, Cr. Ev., 64.

WOOD, J., (after stating the facts). The evidence adduced by appellee tends to show that appellant fired upon Lawhorn as the latter rushed toward appellant, and that appellant stooped down behind the fence and continued firing at him; that Lawhorn was unarmed, and threw his hands to his breast and bent forward at the first shot, and as he straightened up appellant fired again and again till he had fired four shots. The evidence on behalf of appellant tended to prove that Lawhorn drew his pistol when appellant did not see him draw it, and ran toward appellant and fired two shots at him, and that appellant ran up to Lawhorn and begged him to stop shooting, pushed him back in the yard, and then stooped down behind the gate post, when Lawhorn "stuck his pistol around the gate post as though he were going to shoot at Sellers again," before the latter began firing on him.

The testimony for the State thus tends to show that appellant killed his adversary when he, appellant, was in no danger of death or great bodily harm. According to the testimony for the State, there was no excuse or justification for the killing. But, according to the testimony for appellant, he slew Lawhorn in necessary self-defense. In this conflict of the evidence was it error to allow the photographs to be used in evidence? Two of the photographs represent one of the persons as having his coat on and with pistol in hand in a stooping position aiming at the other who is standing in the yard a few feet away in his shirt sleeves with one hand on the gate and the other hanging loosely by his side and making no belligerent demonstrations.

The photographs were taken at the instance of the relatives of Lawhorn. These relatives placed the respective parties to the fatal rencounter in the positions they conceived them to

occupy at the time the fatal shots were fired. The appellant was not present when the photographs were taken, and had no one present to represent him. The photographs might have been considered by the jury as tending strongly to corroborate the testimony of the witnesses for the State.

The court having admitted them, the jury doubtless considered them accurate representations of the positions of the actors in the tragedy at the time the shots were fired. They could have done so, there being no evidence to the contrary. But the photographs were not verified by any witness before their introduction. No one who was a witness to the tragedy testified that they were reproductions of the situation of the parties and the place and conditions connected with the fatal rencounter, which they purported to portray. This was essential primarily to the relevancy of the photographs as evidence. 1 Wigmore, Ev., § § 790-792.

"As a general rule, photographs are admissible in evidence when they are shown to have been accurately taken, and to be correct representations of the subject in controversy, and are of such a nature as to throw light upon it." 9 Enc. of Ev., 771; Wharton's Crim. Ev., § 544; *Blair* v. *Pelham,* 118 Mass. 420; *Church* v. *Milwaukee,* 31 Wis. 512; Underhill on Criminal Ev. 551. The general objection to the photographs as evidence was sufficient to raise the question of their relevancy. Photographs are admissible as primary evidence upon the same grounds and for the same purposes as diagrams, maps and plats. Underhill's Crim. Ev., § 50; 1 Wig. Ev. 792. They aid the jury to understand the evidence of the witnesses by illustrating the situation of the persons, places or things connected with the subject-matter of the inquiry. *People* v. *Buddensieck,* 103 N. Y. 487. The placing of persons about the scene of the rencounter in positions shown by the witnesses to have been occupied by the participants does not render a photograph, showing such positions, irrelevant that in other respects is shown to be relevant. This could be no more hurtful than a witness illustrating his testimony while on the witness stand by pointing out situations and placing persons in the relative positions and attitudes which he testifies were similar to those occupied and assumed by the actors in the real tragedy or occurrence which he is describing, or by

illustrating with the use of a map, plat or diagram the situation of persons, places or things referred to in his testimony. *Ragland v. State,* 71 Ark. 65; *Vance v. State,* 70 Ark. 272; Underhill on Ev. 64; *Shaw v. State,* 83 Ga. 92; *State v. O'Reilly,* 126 Mo. 597; *People v. Jackson,* 111 N. Y. 362; *Blair v. State,* 69 Ark. 558.

The Supreme Court of Mississippi in a similar case holds the photographs inadmissible. *Fore v. State,* 75 Miss. 727. But the weight of authority, and the better reason, we believe, sustain the doctrine we have announced.

But, in the absence of testimony showing that the photographs faithfully represented the objects and situations portrayed, they should not have been used in evidence. This having first been shown, they were then admissible in evidence, but subject to impeachment. Underhill on Ev., § 57, and cases cited in note 2.

For this error the judgment is reversed, and the cause is remanded for new trial.