## DAME v. STATE.

### Opinion delivered May 19, 1924.

1. HOMICIDE—MURDER AND MANSLAUGHTER DISTINGUISHED.—The presence or absence of malice distinguishes the offenses of murder and manslaughter.

2. HOMICIDE—MALICE.—Since no one can look into the mind of another, the only way to decide upon its condition at the time of a killing is to judge from the attending circumstances.

3. HOMICIDE—MALICE—JURY QUESTION.—The question of the presence or absence of malice at the time of the killing is for the jury, when there is any evidence to support its finding.

Appeal from Randolph Circuit Court; *John C. Ash-ley,* Judge; affirmed.

*Pope & Bowers* and *Tom W. Campbell,* for appellant.

. *J. S. Utley,* Attorney General, *John L. Carter,* Assistant, for appellee.

HART, J.   Ben Dame was convicted of murder in the second degree for killing Will Decker, and his punishment was fixed by the jury at nine years in the State Penitentiary.  The case is here on appeal.

The only reliance of the defendant for a reversal of the judgment of conviction is that the evidence is not legally sufficient to sustain the verdict.

The killing occurred at the home of Will Decker in Pocahontas, Randolph County, Ark., on the night of the 31st day of October, 1923.  The deceased had invited several persons, including the defendant, to his home that night for the purpose of playing poker for money. The game commenced about eight o'clock in the evening, but the defendant did not arrive until about midnight. About one o'clock a man by the name of Biggers came in, and the defendant had a quarrel with him.  Decker stopped this quarrel, and the game commenced again. Decker and Dame sat at opposite ends of the table, facing each other, and the other players sat on each side of the table between them.  The game commenced again, and Decker laid his pistol on the table beside him.  Finally Dame lost some money, and commenced to curse about it. Decker told him that he was in his house and would have to stop cursing.  Dame and Decker both became angry and began to quarrel.  Finally Dame commenced to shoot at Decker with his pistol, and fired three shots in rapid succession.  The first of the shots put out an oil lamp which was on the table by Decker.  One of the other two shots killed him instantly.  The lamp was lighted again immediately, and it was found that Decker had fallen over, dead.  The above is the version of the shooting testified to by one of the players who sat next to Dame.

According to the testimony of one of the players who sat next to Decker, when the quarrel began, he looked

at Decker, expecting him to seize his pistol and attempt to shoot Dame. He thought probably that he might grab the pistol. Before he looked around Dame began to shoot, and killed Decker. Dame then said, "Light the lamp, I have killed him."

The wife of the deceased was also a witness for the State. According to her testimony she was in the next room when she heard the shots fired. She heard a man say, "You God damned son-of-a-bitch, I will kill you!" About that time the first shot was fired, and then two more shots were fired. She knew Ben Dame, and recognized his voice as that of the man speaking the words quoted above. After the shooting she heard Dame say, "God damn son-of-a-bitch, if you are not dead, you soon will be." All of the players, including the defendant, left the house after her husband was killed.

A son of the deceased was also a witness for the State. According to his testimony, he was asleep in another room in the house when the shots were fired. The firing of the shots awakened him, and he heard the voice of Ben Dame saying, "If you ain't dead, damn you, you will be." He heard the voice in the room where his father was shot. He went into the room and found his father lying on the floor, dead, with his pistol under one of his legs. He did not remember which leg; but his mother testified that it was under the left leg of the deceased. Both mother and son said that the deceased was right-handed.

It was shown by other witnesses that Decker had served a term in the penitentiary, and thought that Dame assisted in convicting him. He expressed himself that way, and on several occasions threatened to kill Dame for it. One of the threats was made only a short time before the killing, and several witnesses testified that they had communicated the threats to Dame.

Other witnesses for the defendant who were present when the killing occurred testified that Decker first attempted to shoot Dame, and that Dame then shot Decker three times in rapid succession and killed him.

Whether the offense is murder or manslaughter depends upon the presence or absence of malice. Malice in connection with the crime of killing may be express or implied. Inasmuch as no one can look into the mind of another, the only way to decide upon its condition at the time of the killing is to judge from the attending circumstances, and the question of the presence or absence of malice at the time of the killing is for the jury when there is any evidence to support its finding. *King* v. *State,* 117 Ark. 82; *Reed* v. *State,* 102 Ark. 525; *Sweeney* v. *State,* 35 Ark. 585; *Howard* v. *State,* 34 Ark. 433, and *Fields* v. *State,* 154 Ark. 188.

There was a conflict between the witnesses for the State and for the defendant as to the manner in which the killing occurred. The credibility of the witnesses was for the jury. Both the defendant and the deceased were armed. The deceased had previously threatened the life of the defendant, and these threats had been communicated to him, yet he accepted an invitation of the deceased to come to his home on the evening in question and play poker for money. He went armed, and saw that deceased was armed also. They had a quarrel, and the other players interposed and stopped them. The game commenced again, with the defendant and the deceased sitting facing each other at opposite ends of the table. They began quarreling again, and the defendant fired three shots in rapid succession and killed the deceased. The deceased did not fire at all.

According to the testimony of the wife of the deceased, the defendant used language just before and just after he shot the deceased which indicated that he was acting in a spirit of malice or revenge, and not in self-defense, or in the sudden heat of passion when he shot the deceased.

The jury by its verdict believed the testimony of the witnesses for the State, and found their statements to be true. Malice may arise on the instant, and the jury

may have found that the defendant was actuated by express malice in killing the deceased.

It follows that the evidence is legally sufficient to. support the verdict, and the judgment must be affirmed.