HARRIS v. STATE.

Opinion delivered April 26, 1926.

1. CRIMINAL LAW—JOINT INDICTMENT—ORDER OF TRIAL.—Where defendants, jointly indicted for murder, elected to sever for trial, Crawford & Moses' Dig., providing that in such case the defendants may elect the order in which they shall stand upon the docket for trial, is directory merely.

2. HOMICIDE—KILLING IN ATTEMPT TO PERPETRATE LARCENY.—When one engaged in the perpetration of or in the attempt to perpetrate larceny kills another, it is not necessary, under Crawford & Moses' Dig., § 2343, in order to constitute murder in the first degree, that the one perpetrating or attempting to perpetrate the larceny should purposely kill the person slain.

3. HOMICIDE—CONVICTION OF LOWER OFFENSE.—Under §§ 3210, 3211, Crawford & Moses' Dig. § 3140, providing that, upon an indictment for an offense consisting of different degrees, the defendant may be found guilty of any degree not higher than that charged and that all offenses of homicide shall be deemed degrees of the same offense, held that one indicted for murder in the first degree committed while engaged in the perpetration of one of the crimes enumerated in Crawford & Moses' Dig., § 2343, may be convicted of voluntary manslaughter.

4. HOMICIDE—INSTRUCTION AS TO LOWER DEGREES.—Where the State's evidence in a prosecution for murder in first degree tended to prove that defendant killed an officer while attempting to arrest defendant engaged in perpetrating larceny, and defendant's evidence was to the effect that he was not engaged in perpetrating larceny, but shot deceased in self-defense, it was not error to submit to the jury the lower degrees of homicide.

5. CRIMINAL LAW—HARMLESS ERROR.—In a murder trial, where the evidence on behalf of the State shows a premeditated killing and that on behalf of the defense shows self-defense, and there was no evidence tending to establish the offense of manslaughter, any errors in giving instructions on manslaughter are harmless.

Appeal from Pulaski Circuit Court, First Division; *John W. Wade*, Judge; affirmed.

### STATEMENT BY THE COURT.

James Harris was indicted for the crime of murder in the first degree charged to have been committed while attempting to perpetrate larceny.

Bob Davenport was the principal witness for the State. According to his testimony, Harvey Biggs was killed on the night of July 27, 1924, on the Frazier Pike, near the corporate limits of the city of Little Rock, Pulaski County, Arkansas, by James Harris shooting him with a pistol. At that time Davenport and Biggs were motorcycle officers in the police department of the city of Little Rock. Between ten and eleven o'clock on Sunday night, Davenport and Biggs went to 17th and Harrington Streets, to make an investigation about a Ford car that was found in a ditch by the side of the road at that place. The car was in a ditch about five feet deep, and was headed towards Little Rock. The officers saw that the car was a service car, and belonged to a Mr. Hood. They telephoned Mr. Hood about the car, and, while waiting for him to come, the officers got behind a fence in the field, and two negroes drove up in a car south of where the car was in the ditch. They first got out of their car and then went back to it, and came back and let the air out of the tires of the car in the ditch. They then commenced to take the lugs off, and, after they had taken one of the tires off, the officers raised up and said, "Throw up your hands." The larger negro shot at them and ran down the road. The officers followed the negroes down the road about two blocks, and began firing at them. Davenport was ahead of Biggs and about twenty yards behind the negroes. After they had run some distance, one of the negroes fell, and the other one ran a short distance further and fell. Davenport ran up to the first negro and then started to the second one. At this point Biggs fell backward and hollered. Davenport then started back to the negro who shot Biggs, and fired one

shot at him while he was lying on the ground. He then heard some one behind him, and the other negro grabbed him, and they fought over the road for about fifteen minutes. Davenport lost his cap and flashlight in the fight. Both of the negroes got away. Davenport first called an ambulance, and, when he returned to the scene of the fighting he found two deputy sheriffs there. They then found Biggs' body lying over in a ditch on the side of the road. Davenport had blood all over his vest, which got on him from the negro with whom he was fighting.

Another witness for the State testified that two negroes drove by the car in the ditch and stopped their car. They had a flashlight, and went down towards the wrecked car. Pretty soon the shooting commenced. The tires on the ditched car cost $15 when new, and were worth about $12 each. Davenport and Biggs told the negroes that they were officers when they ordered them to throw up their hands.

Blake Williams, chief deputy sheriff of Pulaski County, was also a witness for the State. According to his testimony, he went to Detroit, Michigan, with extradition papers for James Harris, and brought him back to Little Rock. He asked Harris how came him to get into the trouble (referring to the killing of Biggs), and Harris told him that he did not know. Harris said that he was living in Mississippi at the time, and had merely come to Little Rock on a visit. He intended to return to Mississippi on the night the killing occurred. He was driving along with Ollie Smith, his brother-in-law, and noticed a car in the ditch. Harris proposed to Smith that they stop and see if any one was hurt. They stopped, and went over to the car and saw that no one was in it. Smith then said, "Let's strip it." Harris told Smith that he did not want to do that, but Smith insisted, and they turned back to strip the car. About that time some one rose up in the field and commenced shooting. Harris told Williams that he was hit in the right shoulder with a bullet, which knocked him down. He had a fight in the road, and, as soon as he could get

away from the man with whom he was fighting, Harris left. The next morning he found out that Biggs had been killed, and on that account left the country. Williams testified that Harris voluntarily told him about the difficulty and how it happened.

James Harris was a witness for himself. According to his testimony, he intended to start home to Mississippi on the night that Biggs was killed. He was driving along the road with Ollie Smith, his brother-in-law. He proposed that they stop and see about the wrecked car. They saw that nobody was hurt, and the defendant proposed to go on. Just as they started to leave, some one told them to stop. Both the defendant and Ollie Smith then commenced to run. They did not know whether or not the men who ordered them to stop were officers. The defendant was shot in the right shoulder, and then lost consciousness for a time. He denied having fired the shot that killed Biggs.

Other witnesses were introduced by the defendant tending to corroborate his own testimony.

The jury found the defendant guilty of voluntary manslaughter, and left his punishment to be assessed by the court.

From a judgment sentencing him to five years' imprisonment in the State Penitentiary, the defendant has duly prosecuted an appeal to this court.

*Scipio A. Jones, W. A. Isgrig, Isgrig & Dillon* and *Downie & Schoggen,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, J., (after stating the facts). The first assignment of error is that the circuit court erred in refusing to grant the motion of the defendant that Ollie Smith should be first put on trial.

The record shows that Ollie Smith and James Harris were jointly indicted for murder in the first degree, charged to have been committed by shooting and killing Harvey Biggs while they were engaged in stealing four automobile tires of the value of $40. The motion elect-

ing that the case against Ollie Smith should stand first for trial was signed by the defendant, James Harris, and by Ollie Smith. The prosecuting attorney stated that he was not ready in the Ollie Smith case, and it was continued. The court then required James Harris to be tried.

In seeking a reversal of the judgment on this account, counsel for the defendant rely upon § 3140 of Crawford & Moses' Digest, providing, in effect, that, when jointly indicted for a felony, any defendant is entitled to a separate trial, and, when the trials are severed, the defendants may elect the order in which they shall stand upon the docket for trial.

The court has construed this statute to be directory merely. *Clark* v. *State,* 169 Ark. 717, and cases cited. Hence this assignment of error is not well taken.

The next assignment of error is that there is a fatal variance between the indictment and the evidence. The indictment was returned under § 2343 of Crawford & Moses' Digest, which reads as follows: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree."

The defendant, James Harris, and Ollie Smith were charged in the indictment with killing Harvey Biggs while they were engaged in the perpetration of or the attempt to perpetrate larceny. Counsel for the defendant insist that, under a charge of murder in the first degree committed in the attempt to perpetrate one of the felonies enumerated in the statute, the defendant can not be convicted of a lesser degree of homicide. They rely upon the doctrine announced in *Rayburn* v. *State,* 69 Ark. 184, and *Sheppard* v. *State,* 120 Ark. 160. In the case last cited the court said that there are two classes of murder in the first degree, separate and distinct, in one of which it is necessary only to allege that the killing was done

in the perpetration of or attempt to perpetrate one of the felonies named in the statute, while in the other it is essential that the usual technical words, showing the killing was done after premeditation and deliberation, be employed. When a homicide takes place in the commission of larceny, it is not necessary, under our statute, in order to constitute murder in the first degree, that the one perpetrating or attempting to perpetrate the larceny should purposely kill the person slain. Hence it need not be alleged in the indictment.

On the other hand, where the essence of the crime is that the killing is done wilfully, deliberately and premeditatedly, it is necessary to charge and prove such a killing. Hence separate and distinct classes of murder in the first degree are provided for in our statute, and these offenses, being separate and distinct offenses, must be charged substantially as defined in the statute. It has been uniformly held in this State that an indictment for the crime of murder in the first degree, as charged by the usual common-law form of indictment, involves all other grades of homicide which the evidence tends to establish. The State in preferring the indictment may charge any degree of homicide that the grand jury may consider the defendant guilty of, but at the trial he may be found guilty of any crime, the commission of which is necessarily included in that with which he is charged in the indictment, or with an attempt to commit such crime.

Section 3210 of Crawford & Moses' Digest provides that, upon an indictment for an offense consisting of different degrees, the defendant may be found guilty of any degree not higher than that charged in the indictment, and may be found guilty of any offense included in that charged in the indictment.

Section 3211 in part reads as follows: ''The offenses named in each of the subdivisions of this section shall be deemed degrees of the same offense in the meaning of the preceding section: First. All offenses of homicide,'' etc.

In *Allen* v. *State,* 37 Ark. 433, it was held that a jury had the power to return a verdict of a lower degree of homicide under an indictment for one of the specific statutory murders in the first degree, and the ruling was placed upon the construction to be given to the sections of the statute just referred to and quoted from. In that case the murder was charged to have been perpetrated by means of poison. In that case it was recognized that the statute meant that, where poison is knowingly administered with unlawful intent, if death ensues, it will be murder, although death was not intended.

This principle was expressly reaffirmed in *Clark* v. *State,* 169 Ark. 717, where it was stated that a jury had the power to return a verdict for a lower degree of homicide which was committed in the perpetration of robbery, although the court correctly refused to charge the jury upon the lower degrees of homicide because there was no proof upon which to predicate such a charge. Section 3210 of Crawford & Moses' Digest was expressly referred to as part of the reason to sustain the holding. There can be no distinction between a homicide which occurs during the perpetration of a robbery or of larceny and when the homicide is caused by the administration of poison. All of them, under the statute, are deemed murder in the first degree.

In this connection it may be stated that the Supreme Court of the State of Missouri, in construing a similar statute, said that the fact that the Legislature provided that every homicide committed in the perpetration of, or attempt to perpetrate, any arson, rape, robbery, etc., shall be deemed murder in the first degree, instead of saying that it shall be murder in the first degree, recognizes as possible the commission of a homicide in the attempt to perpetrate either of these crimes that will be a less crime than murder in the first degree. *State* v. *Hopkirk,* 84 Mo. 278; and *State* v. *Daly,* 210 Mo. 664.

There is much reason to support this view. The testimony might be conflicting as to whether the homi-.

cide was committed while the accused was perpetrating or attempting to perpetrate any of the felonies included in the statute, or whether it was committed before the attempt to perpetrate the felony had begun. There is always a period of time where the parties are engaged in the preparation to commit a felony and before the actual attempt to perpetrate it has begun.

Again, the testimony might be conflicting as to whether the killing occurred after the felony had been completed and while the persons committing it were escaping. Under the statute it is only when the transaction has gone beyond the intent and preparation, and has passed into acts which amount to an attempt at one of the crimes included in the statute, that the homicide is deemed murder in the first degree.

Again, it is equally evident that, after one of the felonies mentioned in the statute has been committed and the parties committing it have left the place where it was committed and are only engaged in escaping, the killing to prevent arrest would not be deemed murder in the first degree under the statute. This distinction was recognized in the Clark case, and we held that the facts in that case showed that the robbery of the bank had not been completed before the killing occurred. In that case it was held that, under the statute, where it was the purpose of the accused to commit robbery, and, in the execution of that purpose, any person was killed, no further proof of premeditation or of intent to kill is necessary; for, by the express terms of the statute, such killing is deemed murder in the first degree. We held in the Clark case that the trial court properly refused to instruct the jury on the lesser degrees of homicide, for the reason that there was no evidence upon which to base them; but we distinctly recognized that the jury had the power to return a verdict for a lower degree of homicide, although it was its duty to find a verdict in accordance with the instructions of the court.

We are of the opinion that, under §§ 3210 and 3211 of Crawford & Moses' Digest, all lesser degrees of homi-

cide are included in an indictment for homicide charged to have been committed while engaged in the perpetration of one of the felonies enumerated in § 2343 of the Digest. In short, under § 3210, upon an indictment for an offense consisting of different degrees, the defendant may be found guilty of any lesser degree of the offense charged in the indictment. Section 3211 provides that all offenses of homicide shall be deemed degrees of the same offense within the meaning of § 3210.

According to the evidence for the State, the defendant and Ollie Smith were engaged in removing the tires from the wrecked automobile, and actually had one of them off when the officers commanded them to throw up their hands. Davenport and Biggs at the time had on their uniforms, and told the defendant and his companion that they were officers of the law. It was also proved by the State that the tires were worth $15 each when new, and were worth $12 each at the time the defendant and his companion were attempting to take them off of the wrecked car. Both the defendant and his companion were engaged in attempting to steal the tires from the automobile, and it did not make any difference as to their guilt which one of them proposed the crime. The proof on the part of the State also showed that the defendant shot and killed Biggs. Under the views we have just expressed, there is no merit in the contention that there was a variance between the charge in the indictment and the evidence given in support of it.

The next assignment of error is that the court erred in instructing the jury on the lower degrees of homicide. As we have already seen, the lower degrees of homicide were, under the statute, included in the crime charged in the indictment. According to the evidence given in favor of the defendant, it might have been inferred that the killing occurred before they had attempted to steal the tires from the car. According to the testimony of the defendant himself, he was only examining the car when the officers told him to throw up his hands. He began to run

before he had made any attempt whatever to strip the car or to steal any of its parts. In this connection it may be also stated that the evidence for the State tended to show that the defendant was the one who actually killed Biggs. Hence, under the evidence for the defendant, it was not error for the court to have submitted to the jury the lower degrees of homicide.

Then, too, if it should be assumed that there was no evidence to support any of the lower degrees of homicide, and that the defendant was guilty of murder in the first degree under the statute, or nothing, still he was not prejudiced by the action of the court in submitting the lower degrees of homicide.

. This court is committed to the rule that, in a murder trial where the evidence on behalf of the State shows a premeditated killing, while that on behalf of the defense shows self-defense, and there is no evidence tending to reduce the offense to manslaughter, any errors in giving the instructions on manslaughter are harmless. *Pendergrass* v. *State,* 157 Ark. 364, and *Rogers* v. *State,* 136 Ark. 161.

The evidence showed that the officers were outside of the city limits. Section 2905 of Crawford & Moses' Digest provides that a private person may make an arrest where he has reasonable grounds for believing that the person arrested has committed a felony. As we have already seen, the evidence for the State showed that the defendant and Smith had already removed from the automobile one of the tires, which was worth more than $10. Hence the larceny of one tire was a felony.

The theory of the State was that the defendant and his companion intended to strip the ditched automobile and steal all of the parts which could be carried away, and engaged in a fight with the officers when they tried to arrest them. It is plainly inferable from the testimony of Davenport that the defendant shot and killed Biggs while Davenport and Biggs were trying to arrest him and his companion.

It was the theory of the defendant that he and his companion merely went to the ditched car for the purpose of seeing if there was any one hurt, and that they examined it merely out of curiosity. While they were engaged in examining it, some one told them to throw up their hands. They did not know whether the persons calling to them to throw up their hands were officers or not. They ran away, and the defendant was shot by the officers while he was running away and while he was not attempting in any way to injure them.

The respective theories of the State and of the defendant were fully and fairly submitted to the jury upon competent evidence and under instructions containing correct principles of law applicable to the evidence. We find no reversible error in the record, and the judgment will be affirmed.