STATEMENT OF FACTS.
George Washington was convicted before a jury and sentenced to death under an indictment for murder, the body of which reads as follows:
"The grand jury of Pulaski County, in the name and by the authority of the State of Arkansas, accuse George Washington, James Turnage and Lindsey Turnage of the crime of murder in first degree, committed as follows, to-wit: The said George Washington, James Turnage and Lindsey Turnage, in the county and State aforesaid, on the 7th day of December, A.D. 1929, unlawfully, willfully, feloniously and with malice aforethought, and after deliberation and premeditation, and with a felonious intent then and there to rob Wm. H. Roberts, did assault, kill, and murder the said Wm. H. Roberts with a certain pistol loaded with gunpowder and bullets, and then and there had and held in the hands of them, the said George Washington, James Turnage and Lindsey Turnage, against the peace and dignity of the State of Arkansas."
According to the testimony of Mrs. W. H. Roberts, her husband was shot and killed on the evening of December 7, 1929, at their filling station on the Galloway Pike near Rose City, in Pulaski County, Arkansas. The witness, her husband, and C. J. Gordon were sitting in the front room of their filling station and sandwich stand and saw three negroes pass a window in front of their *Page 1013 
place of business. The witness heard them go around towards the back and told her husband to go see what they wanted. He went out to the back, and she heard two shots in rapid succession, and then heard five more shots. Her husband came in at once and said: "They killed me." The first two shots were not as loud as the last five. Her husband was carried in an ambulance to a hospital, and died two days later. According to the testimony of physicians who attended the deceased until his death, he died as a result of the gunshot wounds.
According to the testimony of A. R. Lamb, a deputy sheriff, he arrested the defendant, George Washington, at his home on Mark Valentine's place near Little Rock. He found the defendant in bed, and the latter stated that he had the flu. An examination showed that there was a bullet through the defendant's breast. The deputy sheriff told the defendant that he was the man they were looking for, and that he had shot a man at a filling station. He asked the defendant who was with him, and the defendant replied, "James and Lindsey Turnage." On the next day the deputy sheriff went back to the defendant's house and found a pistol hidden over the top of the door with four cartridges in it, two of which had been recently exploded. The deputy sheriff weighed the bullets taken from the deceased's body and could tell by comparing their weight with that of the bullets remaining in the pistol found that they were of the same caliber.
According to the testimony of R. A. Cook, sheriff of Pulaski County; the defendant voluntarily confessed to him that he had shot and killed W. H. Roberts. No promises whatever were made to the defendant to induce him to confess, and he made the statements freely and voluntarily. The defendant admitted that he did the shooting, but stated that Roberts shot first.
According to the testimony of Leslie Hall, a deputy sheriff of Pulaski County, he guarded the defendant one day while he was in the hospital, and the defendant asked him what they would do to him if he admitted having *Page 1014 
killed Roberts. The defendant told him that they would probably electrocute him. The defendant stated that the Turnage boys suggested that they make some change, and they agreed on the plan and went to the scene of the shooting. The defendant admitted having shot Roberts, but stated that the latter shot first.
According to the testimony of C. J. Gordon, he was present at Roberts' filling station when Roberts was shot. The first two shots were fired from a small gun and the last five from a larger gun.
According to the testimony of J. H. Turnage and that of Lindsay Turnage, the defendant shot and killed W. H. Roberts. They admitted going to the filling station with the defendant, but denied they had any part in the killing. They said that they stayed in front of the filling station, and that the defendant said he was going around to the rear and get some change. He told them that he was going to hold up the filling station.
According to the testimony of D. F. Bennett, he was an officer of the North Little Rock police force and assisted in arresting the defendant. In the ambulance the way to town after the defendant had been arrested, he voluntarily told the witness that he and the Turnage boys went up there to hold up the deceased. The defendant told witness that he shot once.
The defendant was a witness for himself. According to his testimony, he did not intend to rob the filling station when he went down there. He did not shoot at Roberts but one time. He stated that Roberts shot him first. He and the Turnage boys went to the filling station to get something to fix an automobile with. Roberts came to the door and shot him first and then he shot back at Roberts. He carried a gun with him because he was going out to gamble.
The jury returned a verdict of murder in the first degree; and from the judgment and sentence of death, the defendant has prosecuted this appeal. *Page 1015 
(after stating the facts). It is first earnestly insisted by counsel for the defendant that the court erred in refusing to sustain their motion in arrest of judgment. They contend that, inasmuch as the defendant was indicted and tried for murder committed in the perpetration and in the attempt to perpetrate robbery in violation of the provisions of 2343 of the Digest, the indictment is fatally defective and does not charge an offense under that section. Their contention is based on the allegations of the indictment using the word "intent" instead of the word "attempt" to rob W. H. Roberts. They claim to constitute an attempt, something more than an intention or purpose to commit crime is necessary. It is true that generally speaking the word "attempt" is more comprehensive than the word "intent," including both the purpose and an actual effort to carry the purpose into execution; but, in crimes which require force as an element in their commission, there is no substantial difference between an "assault with intent" and an "assault with attempt" to perpetrate the offense. Smith v. State, 126 Ga. 544, 55 S.E. 475; Johnson v. State, 14 Ga. 55; 2 Bishop's New Criminal Procedure (4th ed.), page 80; and Kelley's Criminal Law and Procedure, (4th ed.) 486.
By the common law, every homicide committed in the perpetration of a felony was murder, and this, whether there was any precedent intention of doing the homicidal act or not. Rhea v. State, (Neb.) 88 N.W. 789; Conrad v. State, 75 Ohio St. 52, 8 Ann. Cas. 966; and 4 Cooley, Black. Comm., star pages 200 and 201.
Our statute has modified the common law rule so that murder committed in the perpetration of or attempt to perpetrate certain named felonies including robbery is deemed murder in the first degree. Crawford 
Moses' Digest, 2343; Palmore v. State 29 Ark. 248; *Page 1016 
Rayburn v. State, 69 Ark. 177; Powell v. State,74 Ark. 255; Sheppard v. State, 120 Ark. 166; Clark v. State,169 Ark. 717; and Harris v. State, 170 Ark. 1073.
As will be seen from the body of the indictment which was set out in our statement of facts, the grand jury charged that George Washington, with the felonious intent to rob W. H. Roberts, did assault and kill W. H. Roberts by shooting him with a pistol. This, in plain language, charged the defendant, George Washington, with killing W. H. Roberts with the felonious intent to rob him, or in the attempt to rob him. Consequently, when the indictment charged an assault with intent to kill Roberts, this was necessarily an attempt by violence to rob him. The crime of robbery requires force as an element in its commission, and there can be no substantial difference between an "assault with intent to rob" and an "assault with attempt to rob." Hence a verdict of guilty of murder in the first degree was in conformity with the indictment. Murder committed in the perpetration or attempt to perpetrate robbery under our statute is not a distinct offense, but merely one way of committing murder in the first degree. The authorities above cited hold that the malice in such a case is evidenced by the act of killing while attempting to perpetrate the felony, and that premeditation is not essential to murder in the first degree in such a case. Hence we hold this assignment of error is not well taken.
It is next insisted that the court erred in giving certain instructions to the jury. We do not deem it necessary to set out these instructions. The assignment of error is predicated upon the theory that the indictment did not charge the offense to have been committed in the perpetration of or in an attempt to perpetrate robbery, and that it is error therefore to instruct the jury that if they found beyond a reasonable doubt that the defendant, in the perpetration of or in the attempt to perpetrate robbery, shot and killed Roberts, he would be guilty of murder in the first degree. Reliance is had to sustain *Page 1017 
their contention on Rayburn v. State, 69 Ark. 177, and Sheppard v. State, 120 Ark. 160. As we have already seen, the indictment is a good and valid indictment under 2343 of the Digest, and it was proper for the court to instruct the jury on the law of the case under that section of the statute as laid down under the authorities above cited. Hence we do not deem the assignment of error with regard to the instruction is well taken. The jury, by its verdict, showed that it believed the witnesses for the State, and the testimony given by them warranted the jury in finding that the defendant was guilty of murder in the first degree, committed by killing W. H. Roberts while attempting to rob him.
It is next contended that the court erred in refusing to withdraw from the consideration of the jury two photographs of the scene of the killing introduced by the State. It is conceded that these photographs were properly introduced, and that their introduction was competent in order to show the jury the premises where the crime was charged to have been committed. It is alleged, however, that the court erred in allowing the State to show from the photographs the purported positions of the parties by illustration from men in the pictures. It is insisted that there is no verification of the photographs with reference to the position of the parties, and for this reason the photographs should have been withdrawn from the jury. We think that the photographs were properly verified with respect to the position of the defendant and the deceased by the admission of the defendant himself. According to the testimony of the sheriff, the defendant admitted that the position of certain men in the picture were about the same as they were when the shooting occurred; that is to say, he admitted that he was about where W. L. Hall, one of the parties in the picture, was, when the shooting took place. He said that Roberts was standing in the door of the filling station.
In Sellers v. State, 91 Ark. 175, the court recognized the general rule laid down by authorities on *Page 1018 
criminal evidence that photographs are admissible in evidence when they are shown to have been accurately taken and to be correct representations of the subject in controversy, and are of such a nature as to throw light upon it. The reason is they aid the jury to understand the evidence of the witnesses by illustrating the situations of the persons, places, or things connected with the inquiry. It was only material to show the position of the defendant and of the deceased at the time of the shooting. The defendant admitted to the sheriff the position of these two parties and also testified relative to the same at the trial. He admitted shooting the deceased and only contradicted the witnesses for the State as to which one shot first. According to the evidence for the State, the person with the smaller pistol shot first, and it was shown that the defendant had the smaller pistol. According to the testimony of the defendant, the deceased shot first. Hence we hold that this assignment of error was not well taken.
It is next contended that the court erred in refusing to instruct the jury on the lesser degrees of homicide. We do not think that this assignment of error is well taken. There was no evidence to establish a lesser degree of homicide than murder in the first degree. The evidence showed that the defendant, if guilty at all, was guilty of murder in the first degree; and it was not error for the court to refuse to give instructions authorizing the jury to return a verdict of guilty of one of the lesser degrees of homicide when there was no evidence upon which to base such instruction. In this connection, it may be stated that the court instructed the jury on the subject of self-defense or excusable homicide. Clark v. State,169 Ark. 717; and Harris v. State, 176 Ark. 1073.
We also call attention to the fact that the court told the jury that if it found from the evidence beyond a reasonable doubt that the defendant went to the place of business of the deceased for the purpose of robbing him, and that he attempted to perpetrate the robbery, he could *Page 1019 
not claim the benefit of self-defense unless the jury found that he in good faith abandoned his attempt to commit the robbery and that he retreated as far as consistent with his own safety before shooting the deceased. The court also gave proper instructions to the jury on the question of reasonable doubt and that the confessions of the defendant must be voluntarily made.
Finally, it is insisted that the judgment should be reversed because the court erred in not granting a new trial for the reason that J. H. Brooks, one of the jurors, was at the scene of the crime when the photographs representing the situation of the parties were taken. According to the testimony of the juror, he did not recollect about having been present when the pictures were taken when he was questioned as to his qualifications as a juror in the case. He admitted that he was present when file pictures were taken and might have heard some of the witnesses say something about the case, but, if he did hear them, their statements made no impression upon his mind, and he did not recollect anything about the occurrence when he was examined on his voir dire. He happened to be present when the pictures were taken because he was riding in an automobile with the sheriff which the latter was demonstrating to him. His testimony is corroborated by that of the sheriff, who testified that in summoning a special venire to try the defendant, he did not recollect that Brooks had been present at the time the pictures of the scene of the killing showing the positions of the parties were taken. The juror testified that he had no bias or prejudice for or against the defendant, and that his mind was perfectly free from any prejudice, and that he could and did give the defendant a fair and impartial trial. Therefore, we hold that this assignment of error is not well taken. Pendergrass v. State, 157 Ark. 376.
We have carefully examined the record and are of the opinion that the defendant received a fair and impartial trial. We find no prejudicial error in the record and the judgment will therefore be affirmed. *Page 1020