SIMMONS *v.* STATE.

Opinion delivered October 12, 1931.

374

*Walter A. Isgrig* and *Elmer Schoggen,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

MEHAFFY, J. Appellant and one J. R. Graham were jointly indicted for murder in the first degree. They were charged with killing one Elgin Jordan. Graham pleaded guilty, and appellant was tried in the Pulaski Circuit Court and convicted of murder in the first degree, and his punishment fixed at life imprisonment in the penitentiary. Appellant prosecutes this appeal to reverse the judgment of the circuit court.

The appellant, who was twenty-four years old, lived in North Little Rock, was married, and his occupation was electrical helper. According to appellant's testimony, he had never been in trouble before this except on two whiskey charges.

There had been a robbery of the Engleberger Cafe, but the evidence is in conflict as to whether appellant participated in this robbery. Appellant had known Graham, according to his testimony, four or five months. On the morning that Jordan was killed, appellant had gone near Moore's houseboat, he said, to meet a woman. He saw Graham at that time, and he testified that Graham

asked him to carry him somewhere, as he had several times before.

He returned to where Graham was, Graham asked him to wait a minute, and then Graham went into a little tool shack, and came out pulling down his pocket. Jordon was there, and he and Graham came up to the car. Graham got in the front seat and Jordan in the rear. Graham told appellant to drive out the 19th Street Pike, and while they were driving, they talked about money matters, and Graham said it was not right if Westerman owed Jordan part of the money, and that he ought to pay him, and that when he got out there he'd see that Westerman gave Jordan his part. According to appellant's testimony, they turned off the pike and drove a short distance and Graham told appellant to wait, that they would be back in a few minutes. When Graham told appellant they had reached the place, appellant stopped the car, and Graham and Jordan walked off together.

Graham came back to the car alone, and he and appellant came back to the city. Several days after this Jordan's body was discovered, and the examination showed two gun shot wounds that had caused his death. One bullet entered behind the left ear, ranged downward through the neck, coming out below the right ear. The other bullet entered below the left shoulder blade and passed through the body. Other evidence will be referred to in the opinion.

Appellant first contends that the evidence is insufficient to warrant a conviction of murder in the first degree. The evidence shows that appellant and Graham were associates, frequently together both before and after the killing of Jordan. A short time before the killing of Jordan, Graham and others had robbed the Engleberger Cafe in North Little Rock. Graham testified that the appellant was involved in this robbery. Graham also testified that he and Westerman divided the money.

On the day of the killing of Jordan, appellant and Graham got in the front seat of the automobile and

Jordan got in the back seat. They drove several miles out the Hot Springs Pike and left the pike and drove some distance and were gone a short time and Graham and appellant returned to the city in the car without Jordan. A few days thereafter Jordan's body was found, and two gun shots were in the body, either one of which would have killed him. The physician testified that the wound in the head killed him, but that if he had not been shot in the head, the other one would have killed him. Appellant and Graham were constantly together thereafter until Graham was arrested.

Graham testified that he did not know who killed Jordan. The appellant testified that Jordan and Graham left the car and went a few yards away, out of sight of the car, and that he heard two shots, and that Graham came back to the car and said that he had killed Jordan. This testimony of appellant is contradicted by Graham. If it occurred like appellant said it did, then Graham did know who killed Jordan. The statement of Graham that he did not know who killed Jordan could only mean that he and appellant both shot him, and that he did not know which one killed him. It cannot mean anything else, because, if Graham went out with Jordan alone, and fired both shots, he of course knew who killed Jordan.

The jury had a right to believe that Graham's statement was true, and that both Graham and appellant shot Jordan and that he did not know which one killed him. The jury may have believed that appellant and Graham thought Jordan knew too much about the cafe robbery and that they together took Jordan to the place where he was killed and that both of them shot him.

The undisputed proof shows that Jordan was claiming some of the money, and Graham, according to the evidence, was going to make Westerman pay Jordan some of the money. The circumstances and evidence very strongly indicate that both Graham and appellant drove Jordan out into the woods and killed him. There was ample evidence to justify the jury in believing that both of them took part in the killing.

Another assignment of error relied on is the court's refusal to grant a peremptory instruction. This request for a peremptory instruction was of course based on the theory that the evidence was insufficient to support the verdict, and is the same as his first assignment of error. What we have just said answers this contention.

It is next contended that the court erred in refusing to furnish a full and complete panel of twenty-four jurors. The record shows that the appellant announced ready for trial, and waived arraignment and formal drawing of a jury, and entered a plea of not guilty. The record also shows that, during the examination of the regular panel for the purpose of selecting jurors to try the case, the name of Mrs. N. M. Harrison was called for examination, and the clerk announced that Mrs. Harrison had been excused, whereupon the following occurred: Mr. Isgrig: "How many jurors are on the panel?" Mr. Gladden (clerk): "There are twenty-one." Mr. Isgrig: "I want a full panel of 24 jurors and I won't proceed until it is completed, I am entitled to a panel, and I won't proceed further until I get it." Court: "The request is denied." Mr. Isgrig: "I except."

"The statute provides that by consent of the parties, the drawing of the jury may be waived, in which case the whole panel may be sworn, examined, and disposed of as provided in the preceding section." Crawford & Moses' Digest, § 3146.

The preceding section referred to provides that when the panel is exhausted, bystanders may be summoned. We think these two sections clearly show that when the drawing of the jury has been waived the defendant is not entitled to a full panel of 24 jurors.

Section 3144 of Crawford & Moses' Digest provides for the method of selection in felony cases. In construing these §§, 3144 and 3146, of Crawford & Moses' Digest, this court said: "Our construction is that it is only necessary to have 24 names in the box when a drawn jury is not waived. In this case appellant waived a drawn jury. The waiver was tantamount to saying to the court that there

was no necessity for filling up the panel until the qualification of each of the 12 jurors in the box was passed upon and until the State and appellant should exercise such number of their peremptory challenges as each might desire." *Bohannon* v. *State,* 160 Ark. 431, 254 S. W. 683.

This court also recently said: "When the case was finally called for trial, appellant announced ready and proceeded with the impaneling of the jury without asking for a drawn jury until a portion of the jury had been selected and accepted. The question was raised that there had been no formal arraignment, and, appellant then refusing to plead, the court entered on the docket a waiver of arraignment and a plea of not guilty. It was then that appellant's counsel asked for a drawn jury. It was too late then to make the request, for appellant had, by proceeding with the selection of the jury without a formal arraignment, waived both the arraignment and the right to have a drawn jury." *Herring* v. *State,* 170 Ark. 352, 280 S. W. 353.

The record in the instant case shows that the appellant waived arraignment and formal drawing of a jury and entered his plea of not guilty. His request for a full panel therefore came too late.

Appellant's next contention is that the court erred in permitting the introduction of immaterial and irrelevant photographs and enlargements thereof. The objection to the photographs was that they were immaterial and do not shed any light on the case as to defendant's guilt or innocence and that they were introduced for the purpose of inflaming the minds of the jury. The photographs introduced in this case were shown to have been accurately taken and to correctly represent what they were intended to show. This court stated the rule with reference to the introduction of photographs as follows: "As a general rule photographs are admissible in evidence when they are shown to have been taken accurately and to be correct representations of the subject in controversy and are of such nature as to throw light upon it." *Sellers* v. *State,* 91 Ark. 175, 120 S. W. 840;

*Washington* v. *State,* 181 Ark. 1011, 28 S. W. (2d) 1055; *Nicholas* v. *State,* 182 Ark. 309, 31 S. W. (2d) 527.

The appellant objected to the introduction of the confession or statement that he had made after being arrested. He contends that the court erred in permitting this to be introduced in evidence. The confession was substantially the same as appellant's testimony at the trial, and therefore the appellant was not prejudiced by the introduction of the statement. The appellant testified that the statement was voluntarily made, and that no promises of any kind were made to him and no threats were made, and appellant does not contend that the confession is not true.

The appellant contends that the court erred in permitting a continued reopening of the case. The record does not show any reopening of the case, but there was a recall of witnesses and evidence introduced, but all this was done before the appellant introduced any evidence, and the case had not been closed. But the reopening of the case, either for the re-examination of a witness or the taking of further testimony after the testimony on both sides has been concluded, is a matter within the sound discretion of the court.

The statute reads as follows: "A witness once examined cannot be re-examined as to the same matter without leave of the court. But he may be re-examined as to any new matter upon which he has been examined by the adverse party. After the examination on both sides is concluded, the witness cannot be recalled without leave of the court." Crawford & Moses' Digest, § 4190; *Whittaker* v. *State,* 173 Ark. 1172, 294 S. W. 397; *Teel* v. *State,* 129 Ark. 180, 195 S. W. 32; *Smith* v. *State,* 162 Ark. 458. 258 S. W. 349.

Appellant contends that the court erred in refusing to instruct the jury on the different degrees of manslaughter. The court properly refused the request of appellant to instruct the jury on the different degrees of manslaughter because under the evidence the appellant was either guilty of murder in the first degree or

innocent. There is no evidence in the record to justify an instruction on the other degrees of homicide.

This court recently said, in discussing the refusal of the lower court to instruct on the lesser degrees of homicide: "We do not think that this assignment of error is well taken. There was no evidence to establish a lesser degree of homicide than murder in the first degree. The evidence shows that the defendant, if guilty at all, was guilty of murder in the first degree; and it was not error for the court to refuse to give instructions authorizing the jury to return a verdict of guilty of one of the lesser degrees of homicide when there was no evidence upon which to base such instructions." *Washington* v. *State*, 181 Ark. 1011, 29 S. W. (2d) 1055; *Clark* v. *State*, 169 Ark. 717, 276 S. W. 849; *Harris* v. *State*, 170 Ark. 1073, 282 S. W. 680.

Appellant contends that the court erred in its refusal to instruct the jury on the question of appellant's being an accessory. As we have already said, the evidence in this case shows that the appellant was either guilty of murder in the first degree or innocent. This court said: "One present, aiding and abetting in the commission of a felony, formerly a principal in the second degree is under the statute responsible for the result of the act done as though he had done it himself, a principal offender, and must be indicted and punished as such; and in charging appellant with having stabbed the deceased with a knife, his act was stated according to its legal effect." *Parker* v. *State*, 169 Ark. 421, 275 S. W. 758; Crawford & Moses' Dig., 2308-2309.

Appellant contends that the court erred in giving an argumentative instruction. In the instruction objected to the court simply told the jury that it was not necessary to prove motive in order to warrant conviction.

The court continued in its instruction as follows: "It may happen that there are no external conditions capable of proof of express malice, but the prosecution does not necessarily fail for that reason." The part quoted is the part objected to by appellant. There was

no error in giving this instruction. *Floyd* v. *State*, 181 Ark. 185, 25 S. W. (2d) 766.

The other instructions objected to by defendant were instructions defining murder and malice given in all cases where the charge is murder in the first degree, and have been many times approved by this court.

It is finally contended by the appellant that W. A. Howell, one of the jurors, was not a fair and impartial juror. The affidavit of one D. M. Phillips was introduced to the effect that Howell had stated that Charley Simmons was a crook and a law violator. The statements in this affidavit were contradicted by Howell. The finding of the trial court on this conflicting evidence will not be disturbed by this court. *Cabe* v. *State*, 182 Ark. 49, 30 S. W. (2d) 855.

The trial court did not abuse its discretion. *Pendergrass* v. *State*, 157 Ark. 364, 248 S. W. 914. We find no error, and the judgment is affirmed.