HIGDON *v.* STATE.

4517                                         213 S. W. 2d 621

Opinion delivered October 4, 1948.

882

*O. H. Hargraves,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

WINE, J. Appellant was put to trial under an information charging him with the crime of murder in the first degree, alleged to have been committed by shooting and killing one Evaristo Duran. A verdict was returned by the jury finding him guilty of murder in the second

degree and assessing his punishment at seven years in the State Penitentiary, and from the judgment pronounced on that verdict comes this appeal.

The deceased, Duran, was a man of Mexican origin and a tenant on the farm of the appellant located near Heath. On the night of the fatal shooting, the appellant and the deceased left Heath together in a "jeep" driven by the appellant, ostensibly for the purpose of returning to the Higdon farm. According to the testimony, there is a bridge approximately ninety feet long over a drainage ditch between Heath and the home of the appellant. It was on this bridge that the fatal shooting occurred, and there were no eyewitnesses to the shooting, at least none was introduced by the appellant or the State in the trial court.

One Herbert Flowers was called by the State and testified as follows: "When I got there (the bridge), the Mexican was about at the center of the bridge. I drove up there, and I saw lights shining on him, and I searched him, and some men and boys were there, and I told them not to let anyone touch him until the sheriff got there, and I called the sheriff." Question: "What was his condition with reference to being alive or dead?" Answer: "He was dead. He was still warm."

Ray Campbell, a deputy sheriff of St. Francis county, was called by the State, and testified as follows: "We (accompanied by three State policemen) made an investigation, and found out that the Mexican left Heath with Mr. Higdon about 11 o'clock in a 'jeep.' We didn't know Mr. Higdon. We found out where he lived, and went out and got him and brought him back up there." Question: "Where did Mr. Higdon live from where you found the body?" Answer: "About a mile and a quarter to a mile and a half south."

This deputy sheriff further testified that they (the deputy sheriff and three State policemen) proceeded to the home of the appellant, and took him in custody. Under further questioning, Deputy Sheriff Campbell testified as follows:

Question: "What did he (appellant) say about it?" Answer: "He said that he never had any trouble with him (Duran) and that he was one of the best hands he ever had." Question: "Did he make any statement about the killing?" Answer: "He said that he knew nothing about it."

Yet, the appellant took the stand and testified in his own behalf as follows: Question: "On the night of September 27 or the early morning of September 28, I don't remember which, you are accused of killing one Evaristo Duran. Did you kill that Mexican?" Answer: "Yes, sir." Question: "Will you please state why you killed him?" Answer: "He was attacking me with a knife. He first attacked me with a rock and he hit me with it, and then he attacked me with a knife."

In addition to the foregoing admission by the appellant, it is noted that in ruling on the appellant's request and motion for the trial court "to instruct a verdict for the defendant on the ground that there was not sufficient testimony to sustain a charge of murder, and that there was no testimony that the defendant killed the deceased," the trial judge overruled said motion which was made at the conclusion of the direct testimony offered by the State, with these words:

"The Court holds there is sufficient evidence to go to the jury, and, in addition thereto, in the opening statement to the jury, the counsel for the defendant made the *admission* that the deceased had been killed by the defendant. The motion is denied."

In this, the trial court was correct, and this disposes of appellant's assignment of error number 5.

The appellant's assignments of error 1, 2, and 3 go to the sufficiency of the evidence, and it is insisted that the evidence is insufficient to warrant the verdict of the jury. The effect of said assignments of error 1, 2, and 3 is that the verdict of a jury which rests solely upon speculation and conjecture should not be permitted to stand. This, of course, is elementary law, but where, as here, the verdict does not rest solely upon speculation

and conjecture, and there is evidence of a substantial nature which supports it, this Court has held in many cases, two as recently as May 10, 1948, that it will give the testimony tending to support the verdict its highest probative value. In *Powell* v. *State, ante,* p. 442, 210 S. W. 2d 909, and in the case of *Everett* v. *State, ante,* p. 470, 210 S. W. 2d 918, this Court held:

"We do not attempt to detail all of the evidence, but suffice it to say that after considering it all, and when we give to it, *as we must,* its strongest probative force in favor of the State, the testimony was ample to warrant the jury's verdict of murder in the second degree."

The appellant, as assignment of error No. 4, urges that his constitutional rights were invaded, and that he was deprived thereof by the trial court's refusal to abate and quash the information filed herein by the prosecuting attorney. This Court has very recently, in an opinion delivered April 5, 1948, in the case of *Washington* v. *State, ante,* p. 218, 210 S. W. 2d 307, held adversely to such contention, with extensive citations.

Having hereinabove disposed of appellant's assignment of error No. 5, we pass to assignment of error No. 6, which is that the trial court fell into error in admitting photographs of the nude body of the deceased, showing the five bullet wounds therein, which appellant contends was highly prejudicial, and that said photographs do not reveal any facts that could not be introduced by oral testimony. There was no contention that such photographs were not those of the deceased, accurately taken, nor that the wounds were not the five bullet wounds which resulted in the deceased's death. These photographs, having been shown to be accurately taken and correct representations of the subject matter were admissible to show the area of injury. The admission and relevancy and materiality of photographs is left to the discretion of the trial judge, and any prejudicial abuse will justify reversal on appeal, but there was no such abuse in this case. Am. Jur., Vol. 20, 609, § 729. See, also, the same volume, § 728, p. 608.

"Photographs are admissible in evidence in criminal cases upon the same principles and rules governing their admission in civil cases."

For further citations on the admissibility of photographs, see *Simmons* v. *State*, 184 Ark. 373, 42 S. W. 2d 549; *Sellers* v. *State*, 91 Ark. 175, 120 S. W. 840; *Washington* v. *State*, 181 Ark. 1011, 28 S. W. 2d 1055; *Nicholas* v. *State*, 182 Ark. 309, 31 S. W. 2d 527.

Appellant's assignment of error No. 7 goes to the trial court's overruling appellant's motion to strike the testimony of Lt. Allen R. Templeton with reference to the markings on the bullets removed from the deceased's body for the reason that no photographs were taken for the benefit of the jury. This contention is wholly without merit, and will not be further discussed.

Assignment of error No. 9 is to the effect that there was error in allowing the prosecuting attorney to propound to the defendant upon cross-examination the following question: "Did you ever kill a man before this? How many men have you killed?"

To this question counsel for the appellant objected. The trial court overruled counsel's objection. Appellant then answered, "Yes, sir, I killed another man."

A similar question was discussed by the late Justice Wood in the case of *McAlister* v. *State*, 99 Ark. 604, 139 S. W. 684.

"It is well settled that for the purpose of impairing the credit of a witness by evidence introduced by the opposite party, such evidence must go to his general character; that proof of specific acts of immorality is not competent. Yet it is held that for the purpose of discrediting his testimony, the witness may be asked upon cross-examination as to specific acts."

And quoting further from the same case: "The right to impair the evidence of the witness by cross-examination must not be confounded with the right to impeach a witness by evidence introduced by the opposite party. The former may be exercised within a more extended range than the latter."

It is noted that appellant had ample opportunity under further questioning to show or explain mitigating circumstances, if any, surrounding the killing of another man, which he did not do.

Appellant, for his tenth and last assignment of error, urges that the trial court erred in refusing to give defendant's requested instruction No. 9. This requested instruction No. 9 was largely repetitious and the substance thereof fully covered in other instructions given by the court.

Although counsel for the appellant, in his Motion for a New Trial, sets out ten assignments of error, in his brief, under Argument, he groups them into three "propositions"; namely, (1) sufficiency of the evidence, (2) admission of photographs, and (3) cross-examination of defendant. But this being a felony case, we have reviewed all of the assignments of error set out in appellant's Motion for a New Trial, and we now deal with appellant's three "propositions."

Proposition No. 1 deals with the sufficiency of the evidence, which question in that respect has hereinabove been discussed and disposed of and further, "that there is no evidence to show that the killing was done with malice aforethought, but on the contrary, there is evidence to show that the killing was done in self-defense. The uncontradicted testimony was that the appellant was assaulted by the deceased, first by a rock which he threw at the appellant, and later by a knife."

The only such "uncontradicted testimony" is that of the appellant, himself, and there was no testimony or explanation of how the deceased came into possession of a rock while riding in a "jeep" with the appellant on the bridge where the body of the deceased was found, nor was there any testimony to explain why the deceased, under such circumstances, seated in a "jeep" with the appellant, first threw a rock before assaulting the appellant with a knife, if deceased had intent to inflict bodily harm. Suffice it to say, the jury rejected the plea of self-defense and, as stated by Chief Justice HART in the case of *Townsend* v. *State,* 174 Ark. 1180, 298 S. W. 3: "It is

earnestly insisted that there is no testimony in the record tending to overcome the evidence of the defendant to the effect that he shot and killed the deceased in his own self-defense. It was the peculiar province of the jury to weigh the evidence and to believe the testimony that they believe to be true and to reject that which they believed to be false. The reason is that the jury trying a case hear and observe the conduct of the defendant and the witnesses in the case and are, therefore, better able to estimate the value of the testimony than this court which is necessarily confined to the words of the witnesses as written down.''

We now pass to the question of malice aforethought, and quote further from the same citation, *Townsend* v. *State,* 174 Ark. 1180, 298 S. W. 3: "The law implies malice where there is a killing with a deadly weapon and no circumstances of mitigation, justification, or excuse appear at the time of the killing. Inasmuch as no one can look into the mind of another, much latitude is allowed in the introduction of testimony on the question of motive, and the only way to decide upon the mental condition of the accused at the time of the killing is to judge it from the attendant circumstances.'' See further *Dame* v. *State,* 164 Ark. 430, 262 S. W. 313.

Where, as here, the appellant with deadly aim and accuracy pumped five bullets into the body of the deceased (four in the chest and one in the left arm just above the elbow), it would appear that the appellant's heart was in his work.

Proposition No. 2 deals with the introduction of photographs of the deceased which has been hereinabove discussed and disposed of.

Appellant's proposition No. 3 is addressed to the cross-examination of the appellant by the prosecuting attorney in propounding the question: "Did you ever kill a man before this? How many men have you killed?", and the trial court's overruling the objection of the counsel for the appellant to such question and permitting the appellant to answer, "Yes, sir, I killed another man.''

The substance and effect of this proposition has been hereinabove discussed and disposed of.

Finding no reversible error, the judgment must be affirmed.