COFFER *v.* STATE.

4452                                        204 S. W. 2d 376

Opinion delivered September 22, 1947.

*Francis Wilson, J. Bruce Streett* and *Floyd E. Stein,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

HOLT, J.   On a charge of assault with intent to kill, appellant, I. W. Coffer, was tried, found guilty and punishment of three years in the State Penitentiary assessed by the jury.   From the judgment on the verdict comes this appeal.

Eight alleged errors were assigned in the motion for a new trial.   The first seven, in effect, challenged the sufficiency of the evidence to support the verdict, and in the eighth assignment appellant alleged: "The Court erred in his oral instructions to the jury over the objections of the defendant."

(1)

The evidence was to the following effect:

Mrs. Harold Boggie testified that she left her automobile in a garage in Camden, Arkansas, and directed one of the employees, or mechanics, to make certain repairs. She then left in company with another lady and some hours later returned for the car. Appellant, I. W. (Bill) Coffer had attempted to make the necessary repairs which involved the wiring and lighting system. In the presence of herself and the other lady, another mechanic and employee, "Bookie" Lee, after examining Coffer's work said: "Bill, you haven't-checked this all the way through and you told me you had, but you haven't and said 'we don't want to turn out anything like this' and he (Coffer) said 'you can fix it yourself,' " and Bookie said: "Well, I sure can do it and they backed the car out and put the car in an adjoining stall and another mechanic was there and he told him to help him, that I wanted the car out, and they were under the car checking the wires under there, and this friend and I walked away from the car when we heard the commotion. . . . I heard someone say 'Bill (meaning appellant) please don't do that,' and I looked around and Mr. Coffer was advancing toward Mr. Lee with a crowbar, I did not see Mr. Lee come up from under the car, but I saw him run with Mr. Coffer after him with the crowbar, and he ran up against a bench because there was no other way to get out of there, and that is where Coffer stopped him."

Appellant struck Lee from three to six times before he was stopped. Lee had nothing in his hands and was unarmed and tried to defend himself with his fists.

Bookie Lee, the victim of appellant's assault, testified that, as was his duty, he checked Mrs. Boggie's car after appellant had attempted to make the repairs and discovered, in effect, that the repairs were incomplete and "I called him to come back and let's fix it and he came over there and told me that I could fix the 'damn lights' myself. . . . I backed the car out of his stall

and gave it to Ray Mitchell in the next stall and I got in there and helped him and Bill said 'come here a minute' and I got up and went over there and he said 'you s-of-a-b, you have driven the last car out of my stall that you ever will' and he hit me with a bar on my head. . . . I was knocked blind. I tried to get away from him—I was barehanded, didn't have a thing—and I don't know what else happened.'' ''I was hit across my head, across my shoulder and on my arm. I was knocked blind and addled.'' Lee was taken to the hospital where he remained from about Wednesday to Saturday. He later went to a Memphis hospital where he had an operation on his arm.

Dr. R. B. Robbins testified: ''Q. This patient (meaning Bookie Lee) didn't have a concussion, did he? A. Yes, he had that and a contusion of the brain. Contusion of the brain is the same thing as a bruise,—it is a bruise of the brain.''

It is undisputed that appellant struck his victim, Lee, with a steel bar about two feet long and one inch in diameter.

J. B. Jackson testified: ''A. When I first noticed them they were standing behind a little truck and I turned around and I saw Mr. Coffer make a lick with something and he hit Bookie over the head and Bookie ran and he struck at him again and Bookie ran around the truck and Mr. Coffer went the other way and they met next to me and he struck at him again and Bookie threw his arm up and he hit him on the arm and they got in front of the truck and I got in between them and Mr. Coffer hit at him again with the bar and struck me. . . . Q. How many times did he hit him? A. Twice. Q. And do you know if he hit him before that? A. Twice before that I saw.''

F. A. Sanders testified that he was present and at the time appellant hit Lee ''Bill made the remark to me that 'I am going to whip hell out of him and take my tools and go to the house' and I said 'Bill, that is not the thing

to do, go smoke a cigarette and cool off.' Q. What was Bill's manner when he made that remark—whether he was mad or not? A. He was pretty mad—he seemed to be mad, yes, sir. . . . Q. What was Bookie's condition as to when they separated? A. He acted like he was about out.'' Sanders and another employee ''carried him to the hospital.''

There was other evidence on behalf of the State tending to corroborate the above testimony.

Appellant testified on his own behalf that he struck his victim, Lee, with a steel bar in self-defense and further testified: ''He (meaning Bookie Lee) seemed to say that I didn't know what I was doing, and I got out from under the car and walked over to my bench. . . . I saw Shorty (meaning Witness Sanders) and he said 'you are mad, aren't you' and I said 'no.' I told him I ought to whip the hell out of him and quit for saying what he did to me before these ladies, and he told me to go smoke a cigarette and cool off, and I was cleaning up my tools, and while I was at the back door I made up my mind to quit, and when I called Bookie to tell him I was going to quit, he came at me with a screwdriver in his hand like he was mad because I didn't fix the car.''

We think the above testimony was amply sufficient to warrant the jury's verdict and the judgment. On appeal, we are required to view the testimony in the light most favorable to the State, and the jury's verdict, when supported by substantial evidence, as here, is binding on us. *Brown* v. *State,* 208 Ark. 180, 185 S. W. 2d 274.

## (2)

At the conclusion of all the testimony in the case, the trial court gave a number of unnumbered oral instructions which we have carefully examined and find to be proper declarations of law as applicable to the facts presented. Appellant made no specific objections to any of the instructions. We copy from the record the only reference to any objection by appellant. ''Whereupon, the

1014

court gave to the jury, over the general objections of the defendant, the following instructions, to-wit: . . . Whereupon, at the conclusion of the giving of the oral instructions, the court asked if any further instructions were requested by the State or the defendant, and Mr. Stein, attorney for the defendant, asked the court for an instruction to the jury on manslaughter, which was given as follows: . . . The above and foregoing are all of the instructions requested, given or amended, by the court in the trial of this cause."

Appellant's objection to the instructions at most was a general objection *en masse* to all of the instructions and cannot be sustained if any one of the instructions is good. "It has been repeatedly held that a general exception to several instructions will not be entertained on appeal, if any of them is good. *Owen* v. *State,* 86 Ark. 317, 111 S. W. 466; *Tiner* v. *State,* 109 Ark. 138, 158 S. W. 1087; *Graham* v. *State,* 197 Ark. 50, 121 S. W. 2d 892"; *Massey* v. *State,* 207 Ark. 675, 182 S. W. 2d 671.

As indicated, we think none of the instructions given orally by the court was erroneous. Certainly all of them were not. Similar instructions have been many times given by trial courts and approved by this court.

From the record, appellant appears to have had a fair and impartial trial and no error appearing, the judgment is affirmed.