GRAYS *v.* STATE.

4669                                    242 S. W. 2d 701

Opinion delivered October 8, 1951.

*Elbert S. Johnson* and *Gene Bradley,* for appellant.

*Ike Murry,* Attorney General, and *George E. Lusk, Jr.,* Assistant Attorney General, for appellee.

PAUL WARD, J.   On March 12, 1951, appellant, Arthur Nox Grays, was charged with first degree murder for the killing of Homer Tucker on the 4th day of the same month.  Tucker was a taxi driver operating out of Blytheville and the killing occurred about eight miles east of there near a place called Amorel.  The trial, held on the 7th day of the following May, resulted in a conviction for murder in the first degree with the death penalty attached.  Motion for a new trial was filed and overruled and on May 9th the court sentenced appellant to be electrocuted on the 15th day of August, 1951.  From the above sentence and judgment of the court this appeal has been properly executed.

The deceased left Blytheville in his taxicab sometime during the night of Saturday, March 3, 1951, with appellant in the back seat and another colored man, called ''Albert,'' who is charged with the same offense and to be tried later, in the front seat with the deceased.  Later that night about one o'clock the deceased was found dead on the road near his own car.  There was blood on both seats of the car and on all the door handles.  Deceased had been stabbed in several places about the throat with a knife or other sharp instrument.  Appellant, when apprehended the next morning, first claimed that three boys had committed the murder after they had forced him to take off his clothes and give to them, but later changed his story.  Appellant admitted that ''Albert'' asked him for his knife and after he had given it to him, ''Albert'' inflicted the mortal wounds.  When appellant was arrested at his home the officers found his clothes were spotted with blood and he had in his possession a pocketbook which belonged to the deceased and which contained deceased's social security card.  A knife with

blood on it, found in a field near the scene of the murder, was identified as belonging to appellant and appeared to be the same knife he admitted getting from a neighbor sometime previously.

In the defendant's statement which was admitted in evidence, he admitted, among other things, that he and a "dark boy," whose name he did not know, talked about robbing Mr. Tucker a few hours before the killing; that they got in the taxi with Tucker and started out; that he let the other boy, who was in the front seat, have his knife with which he stabbed Tucker; that he got blood on his trousers, shirt, and jacket; that the knife he threw in the cotton field was his and that he handled it after it had blood on it; and that he took Tucker's pocketbook while he (Tucker) was scuffling in the front seat.

No testimony was introduced on behalf of the defendant (appellant).

During the course of the trial the defendant objected to the introduction of the pocketbook or billfold in evidence on the ground that the proof did not show that it was in the same condition as when taken from him. We find no error in this connection. The pocketbook was identified by the widow of the deceased as being his and, though some of the money had been taken out, the pocketbook had been in no way altered. It was competent to show a connection between the defendant and the murder. In the case of *Cross* v. *State,* 200 Ark. 1165, 143 S. W. 2d 530, the court used this language:

"Where the changed condition of clothing worn by deceased when killed does not prevent them from tending to prove or disprove an issue in the case, then it is proper to admit the clothes to be introduced in evidence."

The only other objection made by the defendant related to the introduction of pictures of the deceased's taxicab. After both sides had rested, the court, over the objection of the defendant, allowed the pictures to be introduced by the State. Again we find no error prejudicial to appellant. The pictures were shown to have been properly taken soon after the murder and they accurately showed the condition of the car with reference to

blood stains about which testimony had been given. In fact no contention was made that the pictures were not accurate or properly made. This court has many times held photographs to be admissible in evidence. In the case of *Simmons* v. *State*, 184 Ark. 373, 42 S. W. 2d 549, it was said:

"The objection to the photographs was that they were immaterial and do not shed any light on the case as to defendant's guilt or innocence and that they were introduced for the purpose of inflaming the minds of the jury. The photographs introduced in this case were shown to have been accurately taken and to correctly represent what they intended to show. This court stated the rule with reference to the introduction of the photographs as follows: 'As a general rule photographs are admissible in evidence when they are shown to have been taken accurately and to be correct representations of the subject in controversy and are of such nature as to throw light upon it.' *Sellers* v. *State*, 91 Ark. 175, 120 S. W. 840; *Washington* v. *State*, 181 Ark. 1011, 28 S. W. 2d 1055; *Nicholas* v. *State*, 182 Ark. 309, 31 S. W. 2d 527." Appellant, however, contends that it was improper to allow them to be introduced after both sides had rested. This was a matter that addressed itself to the sound discretion of the court and under the circumstances we think the court did not abuse its discretion. Our court sustains this view in *Levells* v. *The State*, 32 Ark. 585, where it was said:

"The testimony of Whitlow would have been more properly offered before the evidence of the defendant was adduced, but its admission at the time when offered was within the sound discretion of the court, which, without some showing to the contrary, we must presume was properly and judiciously exercised."

Also, to the same effect in *Walker* v. *State*, 100 Ark. 180, 139 S. W. 1139:

"Error of the court is assigned in permitting the State to introduce testimony not properly in rebuttal after defendant had rested his case. The statute (Kirby's

Digest, § 2378) authorizes the presentation of testimony in chief after the defendant has closed his case when it appears to be necessary 'in furtherance of justice,' and of that the trial court must be the judge. It rests within the sound discretion of trial courts to permit testimony to be adduced out of time, and the exercise of that discretion will not be disturbed by this court unless an abuse is shown."

The same rule was likewise announced in *Whittaker* v. *State,* 173 Ark. 1172, 294 S. W. 397, in this language:

"The reopening of a case for the re-examination of a witness, or the taking of further testimony after the testimony on both sides has been concluded and the cause has been submitted to the jury, is a matter, under our statutes and decisions, within the sound discretion of the trial court, and this court will not reverse the ruling of the trial court unless it appears that the court, in making such ruling, has abused its discretion."

In addition to the above, appellant sets out in the motion for a new trial three additional grounds for a reversal, *viz:* The verdict and judgment are (a) contrary to the law; (b) contrary to the evidence; and (c) contrary to the law and the evidence. These three contentions, with the exception mentioned below, merely challenge the sufficiency of the evidence. This is true because it is not insisted that there is any error contained in the instructions, and after a careful scrutiny we find none. In our opinion the evidence is sufficient to support the verdict of the jury and the judgment of the court. The testimony must be viewed in the light most favorable to the State as announced many times by this court and recently in *Coffer* v. *State,* 211 Ark. 1010, 204 S. W. 2d 376:

"On appeal, we are required to view the testimony in the light most favorable to the State, and the jury's verdict, when supported by substantial evidence, as here, is binding on us. *Brown* v. *State,* 208 Ark. 180, 185 S. W. 2d 274."

As intimated above, this leaves for consideration the principal contention of appellant that there is no evidence to show malice, premeditation and deliberation. It is argued that if the information had charged (as it did not) the defendant with killing the deceased while in the perpetration of robbery, it would not have been necessary to prove malice, premeditation and deliberation. It is true that these are necessary elements of first degree murder, but it is also true that these elements may be inferred from other facts and circumstances, as has been consistently held by this court. In the case of *Ezell* v. *State,* 217 Ark. 94, 229 S. W. 2d 32, we find:

"The State is not bound to prove a motive for the killing and the absence thereof is only a circumstance to be considered with other facts and circumstances in determining guilt or innocence. *Hogue* v. *State,* 93 Ark. 316, 124 S. W. 783, 130 S. W. 167."

Also, see, *Craig* v. *State,* 205 Ark. 1100, 172 S. W. 2d 256, where it was said:

"While the intent to kill cannot be implied as a matter of law, it may be inferred from facts and circumstances of the assault, such as the use of a deadly weapon in a manner indicating an intention to kill, or an act of violence which ordinarily would be calculated to produce death, or great bodily harm. . . .

"Under the express provisions of our statute 'malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing manifest an abandoned and wicked disposition.' Pope's Digest, § 2967."

In our opinion the facts and circumstances surrounding this case as set forth above are such as to support the finding of the jury on all the necessary elements constituting first degree murder.

During the trial of the case below the prosecution sought to introduce in evidence a question-and-answer statement signed and sworn to by the defendant, in the presence of witnesses, and the defendant's counsel stated to the court that he would like to cross-examine the wit-

ness before the statement was admitted. In reply, the court stated that it would be admitted temporarily with the understanding that after later cross-examination, if it appeared the statement was not admissible, it would be withdrawn. This procedure was followed without any further objections by the defense. Later, after full examination and cross-examination, the court, without any objections on the part of the defense, admitted the statement as exhibit number four. In our opinion this procedure was in no way prejudicial to the defendant. It further appears to us that the facts and circumstances surrounding the taking of defendant's statement, as disclosed by the evidence and the statement itself, clearly show that it was properly admissible in evidence.

The judgment of the lower court is affirmed.