BAILEY v. STATE.

4866                                302 S. W. 2d 796

Opinion delivered May 27, 1957.

[Rehearing denied July 1, 1957]

*Thad D. Williams,* for appellant.

*Bruce Bennett, Atty. Gen'l.; Thorp Thomas, Asst. Atty. Gen'l.,* for appellee.

J. Seaborn Holt, Associate Justice. Appellant, Luther Bailey, was convicted of the crime of rape and the death penalty was assessed,—§ 41-3401—41-3402—41-3403, Ark. Stats. 1947. From the judgment comes this appeal.

For reversal appellant has assigned 31 alleged errors in his motion for a new trial. The first three assignments question the sufficiency of the evidence. The prosecuting witness (a widow, 49 years of age, mother of two daughters and supervisor with the Independent Linen Company) testified that in the early morning (about 12:30 a.m.) of June 14, 1956, she was awakened by the barking of her neighbor's dogs, heard noises in her house and got up to investigate. As she was going into the kitchen a man seized her, carried her into a bedroom where he forcibly and against her will, and holding a knife at her throat, had intercourse with her. There was actual penetration. Immediately following the first assault on her, he forced her to give him her purse, (later found in his car) containing about $190— cut the telephone wire—and while in her living room forcibly and against her will had intercourse with her again. He dropped his identification cards in her bedroom. He then left.

She immediately went to the home of a next door neighbor and reported what had happened. This neighbor, Mr. Pitts, testified that the prosecuting witness, at between 1:00 and 1:30 a.m. on June 14, "came hammering on my door . . . she was dressed in a gown and had a robe on and a pair of shoes . . . She was very upset . . . nervous and crying . . . on her leg there was a bruise and on her throat scratches and cuts or some kind of lacerations and also her hands and arms were bruised." He called the police and one of her daughters within five minutes after she came in. He went with the police to her house, found it locked and entered by unlocking the back door. The light switch had been turned off. They found a billfold with appellant's name on it on the floor of her bedroom. A small window in the pantry, some 6½ feet from the ground,

had been raised. There was a torn window screen on the ground. It had been on the window the day before. There was other evidence tending to corroborate the prosecuting witness. However, corroboration was not necessary to a conviction of rape. In *Hodges* v. *State,* 210 Ark. 672, 197 S. W. 2d 52, we said: "Headnote 1. Rape—Prosecuting Witnesses Need Not Be Corroborated.—In the prosecution of appellant on a charge of rape, it was not necessary that the testimony of the prosecuting witness be corroborated." Also see *McDonald* v. *State,* 225 Ark. 38, 279 S. W. 2d 44.

Appellant admitted that he did have intercourse with the prosecuting witness, but stoutly insisted that she did not object but voluntarily submitted to him. This made a question of fact for the jury. We think there was ample substantial evidence to support the jury's verdict. The jury is the sole judge of credibility of the witnesses and the weight to be given their testimony.

In Assignment 4, error is alleged because the court denied his motion to consolidate along with the charge of rape, the charges of robbery and burglary. The answer is that § 43-1010 Ark. Stats. 1947 provides specifically what offenses may be joined in any indictment, and no provision is made for the joining of rape, burglary and robbery.

In Assignment 5, appellant says the court erred in refusing to allow him to take an "oral deposition" of the prosecuting witness, relying on Act 335 of the Acts of 1953. We do not agree with this contention. We hold that Act 335 applies only to civil cases and that the legislature so intended. Reference is made repeatedly throughout the act to the "parties", "a party", or to any party—a defendant is not used. The applicable statute is § 43-2011 Ark. Stats. 1947 which provides: "Depositions.—The court, or judge in vacation, or a judge of the Supreme Court, may authorize a defendant to take the deposition of a material witness where there are reasonable grounds to apprehend that, before the trial, the witness will die or become mentally in-

capable of giving testimony, or physically incapable of attending the trial, or of becoming a nonresident of the state. The materiality of the testimony, and the reason for taking his deposition shall be shown by affidavit.'' Here no showing by affidavit was made by appellant that the prosecutrix was about to die, would become mentally or physically incapable to testify, or was about to become a nonresident, or that she would not be available at the trial. Had the legislature intended Act 335 to apply to criminal cases (as well as civil) it could easily have so declared. Furthermore, the appellant, himself, introduced in evidence the statement that the prosecutrix made to Deputy Prosecuting Attorney Jernigan.

In Assignments 6 and 7 appellant contends ''that the court erred in not allowing the Jury Commissioners, for the March term 1952 to the March term 1956 inclusive, to testify, as these Jury Commissioners would have testified to the matters, allegations and other things set out in Luther Bailey's motion to quash the regular and special jury panels for the March 1956 term; that the court erred in overruling defendant's motion to quash the regular panel and the special panel of the petit jury.''

Mr. Louis Rosteck, Deputy Clerk of the Circuit Court, testified in effect that his record shows that two negroes were selected by the jury commissioners for the March 1952 term, out of a total of 24. It is the general procedure of this court to select 24 jurors on the regular panel and 12 alternates. These two negroes actually served. There was one negro on the jury panel for the September 1952 term. There were two negroes selected for the March 1953 term. Five negroes served during the September 1953 term; three were on the extra panel and two on the regular panel. For the special panel five jurors were selected out of 21. There is nothing to indicate on the record whether they were white or colored. There were two negroes on the March 1954 term. There were 24 persons on the special panel; only five were selected. The record does not indicate whether the remainder were colored or white. Two negroes were selected on the panel for the September

1954 term. There was a special panel for that term of 100 names; seven persons were selected; they were all white. He did not know whether the remaining people on the list were colored or white. Three negroes served on the March 1955 regular panel. One person was used from the special panel of 100 names. Four negroes were included in the 100. Only one person out of 100 was used on the September 1955 special panel. There were three negroes on the regular panel. Three negroes were selected on the regular panel for the March 1956 term. The first special panel selected has 150 names on it; it does not indicate colored and white. The first 100 on this list were ordered to report this morning; 27 of them are here; none are negroes; . . . "Record of Poll Tax receipts issued in Pulaski County for the years 1954 and 1955.

Total number colored

       (1954) 10,180  14.8%  (1955) 8,557  13.3%
Total number white

       (1954) 58,484  85.2%  (1955) 55,980 86.7%''

We think the court did not err in refusing to allow the jury commissioners to testify. They had not been subpoenaed to appear as witnesses and were not present. Furthermore, after the court had denied his request that they be permitted to testify, appellant failed to show what the jury commissioners would have said had they testified. See *Turner* v. *State,* 224 Ark. 505, 275 S. W. 2d 24.

Appellant next argues that the above testimony of Louis Rosteck alone was sufficient to show racial discrimination. We do not agree. We think Rosteck's testimony,—which speaks for itself,—does not show an intentional and systematic limitation of negroes on the jury list. The rule appears to be well settled that an accused is not entitled to a jury composed in part of members who are of his race. *Cassell* v. *Texas,* 339 U. S. 282, 94 L. Ed. 839, 70 S. Ct. 629; *Akins* v. *Texas,* 325 U. S. 398, 89 L. Ed. 1692, 65 S. Ct. 1276. Neither was appellant entitled to proportionate representation on the

jury panels. "Fairness in selection has never been held to require proportional representation of races upon a jury . . . The mere fact of inequality in the number selected does not in itself show discrimination," *Smith* v. *State,* 218 Ark. 725, 238 S. W. 2d 649. Also see *Virginia* v. *Rives,* 100 U. S. 313, 25 L. Ed. 667; *Thomas* v. *Texas,* 212 U. S. 278, 53 L. Ed. 512, 29 S. Ct. 393.

In Assignment 8, appellant contends, that the court erred in permitting witness Charles Pitts to testify as to the prosecutrix's physical appearance when he admitted her to his home, on the night the crime was committed, at about 1:30 a.m. on June 14. We have held contrary to this contention in *Snetzer* v. *State,* 170 Ark. 175, 279 S. W. 9, "Headnote 4. Rape—Evidence.— In a prosecution for assault with intent to rape, evidence that the prosecutrix had a scratch on her face the day after the alleged assault, and that her side was so badly hurt that she consulted a doctor three or four days later, was competent."

In Assignments 9, 10, 11 and 15, appellant contends, in effect, that the court erred in allowing certain officers to testify as to a statement, or confession, made and signed by him. We do not agree. The record reflects that appellant made the statement freely, voluntarily and without threats, duress or any promise of leniency, and after being warned that it might be used against him. See *Morris* v. *State,* 197 Ark. 695, 123 S. W. 2d 513 and *Wooten* v. *State,* 220 Ark. 750, 249 S. W. 2d 964. Furthermore, appellant introduced his own statement in evidence in his defense.

In Assignments 12, 13, 14 and 16, appellant contends that the court erred in admitting in evidence (a) a billfold belonging to appellant, found in the prosecutrix's bedroom, (b) her purse found in appellant's car and (c) certain photographs showing the bruises on her body, as above indicated. No error is shown here. The evidence reflects that appellant admitted to two officers that the folder found in the bedroom belonged to him. At the time of appellant's arrest Officer Turner found prosecutrix's purse in appellant's car. Another officer

testified that this purse was turned over to him by Officer Turner and was in substantially the same condition as when received. In *Grays* v. *State,* 219 Ark. 367, 242 S. W. 2d 701, where the facts were similar in effect to those presented here, we said: ''The pocketbook was identified by the widow of the deceased as being his and, though some of the money had been taken out, the pocketbook had been in no way altered. It was competent to show a connection between the defendant and the murder.'' As to the photographs in question, the prosecutrix and a physician testified that they accurately represented her injuries, showing the area and the condition of the bruises on her body. In *Oliver* v. *State,* 225 Ark. 809, 286 S. W. 2d 17, we said: ''The admission and relevancy of photographs must necessarily rest largely in the discretion of the trial judge. We find no abuse of discretion in the admission of photographs in the instant case. Admissibility of photographs does not depend upon whether the objects they portray could be described in words, but rather on whether it would be useful to enable the witness better to describe and the jury better to understand, the testimony concerned. Where they are otherwise properly admitted, it is not a valid objection to the admissibility of photographs that they tend to prejudice the jury. Competent and material evidence should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits for which it is admissible.'' See also *Jones* v. *State,* 213 Ark. 863, 213 S. W. 2d 974; *Black* v. *State,* 215 Ark. 618, 222 S. W. 2d 816; *Smith* v. *State,* 216 Ark. 1, 223 S. W. 2d 1011; *Perkins* v. *State,* 217 Ark. 252, 230 S. W. 2d 1.

In Assignments 17 and 18, appellant challenges the correctness of the court's striking the testimony of Irene Wright. She testified that appellant lived close to her and that she had received several telephone calls for him from a person who identified herself as the prosecuting witness. She did not know the prosecutrix and was not sure that the voice was that of a white woman. We think this testimony was properly excluded for the reason that the identity of the person who talked to the

witness over the telephone was not satisfactorily identified. "Generally, in order to introduce evidence of a telephone conversation or communication, otherwise unobjectionable, the identity of the person, who is claimed to have talked over the telephone, must first be satisfactorily established by the party seeking the introduction of the telephone conversation. To hold one responsible for statements and answers made over the telephone by unidentified persons would open the door for fraud and imposition," 20 Am. Jur., Evidence, § 366, p. 334.

In the remaining assignments, 19—31, appellant contends that the court erred in giving certain instructions offered by the State and in refusing to give his requested instructions 1, 2, 3, 4, 5, 9, 12, 13, 14, 15 and 20. It appears that only a general objection was made by appellant to the court's refusal to give all of his requested instructions above with the exception of Instruction 20 (to which refusal a specific objection was made), which was a requested instruction on the lesser offense of assault with intent to commit rape. As indicated, other than the specific objection to the court's refusal to give his Instruction 20, only a general objection was made to the refusal to give the other instructions. It was appellant's duty by specific objection to point out any vice in these instructions. This he failed to do. See *Rutledge* v. *State*, 222 Ark. 504, 262 S. W. 2d 650. We have examined these instructions to which appellant was content to make only a general objection and find no error in any of them.

We think there was no error in the court's refusal to give appellant's Instruction 20 on assault with intent to commit rape. The prosecutrix's testimony tended to show that appellant was guilty of rape. The appellant admitted that he did have intercourse with her but testified that she did not object—but consented. In these circumstances we think the court properly refused to instruct the jury on the lesser offense of assault to rape. We said in *Whittaker* v. *State*, 171 Ark. 762, 286 S. W. 937, "Moreover, there was no testimony to justify the court in giving an instruction allowing the jury

to return a verdict for an assault with intent to commit rape. The testimony of the prosecutrix certainly tended to prove that the appellant was guilty of the crime of rape, and nothing less. On the other hand, the testimony of the appellant himself tended to prove that the appellant was not guilty of any offense. Therefore the court correctly instructed the jury that, under the testimony in the case, they should either find appellant guilty of the crime of rape as charged, or they should acquit him altogether." See also *Needham* v. *State*, 215 Ark. 935, 224 S. W. 2d 785.

Affirmed.

## (ORDER OF JULY 1, 1957)

Rehearing denied. HOLT and WARD, JJ., upon reconsideration think the petition for rehearing in this case should be granted on the sole ground that the trial court erred in refusing to give the instruction, requested by appellant, on the lesser offense of an assault with intent to commit rape.