Luther BAILEY, Petitioner,

v.

Lee HENSLEE, Superintendent of Arkansas State Penitentiary, Respondent.

No. LR 60 C 25.

United States District Court
E. D. Arkansas, W. D.
May 26, 1960.

Thad D. Williams, Little Rock, Ark., for petitioner.

Bruce Bennett, Atty. Gen., Thorp S. Thomas, Asst. Atty. Gen., for respondent.

YOUNG, District Judge.

This is a petition for a writ of habeas corpus by the petitioner, Luther Bailey, a Negro under sentence of death by the State of Arkansas for the crime of rape committed on a white woman June 14, 1956. Petitioner was tried upon this charge, convicted and sentenced in September of 1956.

## I

█ It is the petitioner's contention here (as modified by stipulation of his counsel read into evidence):

(1) That Negroes were limited unduly and purposely in the selection of the members of the jury panel for the First Division (criminal) of the Pulaski County Circuit Court during the March 1956 term, and that such practice was the systematic plan for all jury commissioners from 1938 through the March 1960 term;

(2) No Negro jury commissioner had ever been appointed by any judge of the Pulaski County Circuit Court;

(3) There has been an intentional and systematic exclusion of Negroes to serve on the jury panel selected in the Second and Third Divisions (civil) of the Pulaski County Circuit Court, and that during the March 1956 term, 17 special jurors were called on one case (not that of petitioner) in the First, or Criminal, Division of the Court.[1]

(4) These alleged facts violate the Constitutional rights of the petitioner under the Fourteenth Amendment to the United States Constitution.

An order to show cause was issued to respondent upon this petition, upon which hearings were held on both April 1 and April 12, 1960. Evidence was received from the witnesses called by petitioner, who included the three jury commissioners for the March 1956 term of the First Division court, the term in which petitioner was tried. The court also considered the records, transcripts of testimony, and prior reported history, state and federal, of petitioner's trial and subsequent appeals. Upon this consideration of the petition, it is the decision of this court that petitioner has failed to prove his allegation of racial discrimination, either by exclusion or by limitation, in the selection of the petit jury panels. The petition for writ of habeas corpus is denied.

## II

After his conviction in September of 1956, petitioner appealed to the Arkansas Supreme Court, which affirmed. Bailey v. State, 1957, 227 Ark. 889, 302 S.W.2d 796. The Supreme Court of the United States denied certiorari. 1957, 355 U.S. 851, 78 S.Ct. 77, 2 L.Ed.2d 59.

Bailey's present counsel was appointed to represent him by the Pulaski County Circuit Court more than a month before his trial. On the morning of the trial, his attorney filed a motion to quash the panel of regular and special panel of petit jurors for the alleged reason that the jury commissioners of the trial court in Pulaski County had purposely limited and restricted the number of Negroes serving on any petit jury panel from the years 1952 through 1956, and particularly as to the March 1956 term had selected only three Negroes out of the total of 36 selected to serve on the regular jury panel, and no Negroes out of 100 selected to serve on the special jury panel; and that such discrimination violated the Fourteenth Amendment. (Original trial transcript, pages 14–18.)

Petitioner then filed a petition for a writ of habeas corpus in the court of his conviction, alleging denial of compulsory

---

1. The Circuit Court of Pulaski County is divided into three divisions. The First Division, in which petitioner was tried, tries only criminal cases. The Second and Third Divisions handle the civil docket.

process and systematic limitation of Negroes on the petit jury panel. His petition was later amended to raise only the question of denial of compulsory process.

Upon denial of his petition, Bailey again appealed to the Supreme Court of Arkansas, but the Court held that the point involved (denial of compulsory process) must necessarily have been raised and litigated, or waived, in the original trial proceedings. Bailey v. State, Ark.1958, 313 S.W.2d 388. Certiorari was denied by the United States Supreme Court, 1958, 358 U.S. 869, 79 S.Ct. 101, 3 L.Ed.2d 101, "without prejudice to an application for a writ of habeas corpus in an appropriate United States District Court".

Then Bailey applied for a writ of habeas corpus in this court before J. Smith Henley, J. The basis for the writ was the claim that Bailey was denied compulsory process for obtaining witnesses in his favor in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

Upon hearing of that petition, no compulsory process for attendance of witnesses was requested by Bailey, nor were witnesses, offers of proof, affidavits or other forms of additional proof introduced. The petition was denied. Bailey v. Henslee, D.C.E.D.Ark.1958, 168 F. Supp. 314.

Petitioner Bailey's appeal of the lower court's denial of his petition was affirmed by the Eighth Circuit Court of Appeals. 1959, 264 F.2d 744. That court, in its opinion, held that there was nothing to indicate that the jury commissioners excluded Negroes from the petit jury panel, and that no offer of testimony had been made by petitioner to support this allegation.

The court said, at page 748:

"After having made his record in the trial court, appellate (Bailey) deliberately omitted urging the question which he now seeks to urge, either in his motion for new trial or on appeal."

Petitioner again appealed to the United States Supreme Court, but certiorari was denied, 1960, 361 U.S. 945, 80 S.Ct. 408, 4 L.Ed.2d 364.

"without prejudice to a further application for writ of habeas corpus in the appropriate United States District Court, on the question whether members of petitioner's race were deliberately and intentionally limited and excluded in the selection of petit jury panels, in violation of the Federal Constitution."

Shortly thereafter, Bailey filed this petition for a writ of habeas corpus with this court.

### III

It is true that such adverse State determinations, with the subsequent denials of certiorari by the United States Supreme Court, or the previous petition for habeas corpus denied by this court, does not prevent this court's reception of evidence or its evaluation of the prior record in determining the asserted federal grounds for habeas corpus. Brown v. Allen, 344 U.S. 443, at pages 458, 497–513, 73 S.Ct. 397, 437, at pages 407, 441–449, 97 L.Ed. 469. Nor can it be said to be res adjudicata, as the cases demonstrate.

### IV

It was admitted by respondent upon petitioner's request that:

(a) No Negro has served as a jury commissioner in Pulaski County since 1938.

(b) No Negro has served on a petit jury panel in the Third Division (civil) of the Pulaski County Circuit Court since 1948.

The following table (referred to as Table 1) has been prepared from the complete record before the court to allow a comparison of the various allegations

and testimony concerning Negro representation on the petit juries. The table reveals that most of the discrepancies in the evidence before the court are more apparent than real when considered against the complete record.

### Table of Negro Jurors
### First Division (Criminal) of Pulaski Circuit Court
### March 1952 through March 1956 Court Terms

| | Allegations of Motion to Quash Panel 9/19/56 | Testimony of Court Clerk 9/19/56 | | Bailey's Exhibit No. 1 4/1/60 | | Corrections To Exhibit No. 1 | |
|---|---|---|---|---|---|---|---|
| | | Ordinary | Special | Regular | Alternate | Regular | Alternate |
| March 1952 | 2 | 2 | | 0 | 0 | | |
| September 1952 | 1 | 1 | | 0 | 0 | | |
| March 1953 | 2 | 2 | | 2 | 0 | | |
| September 1953 | 3 | 2 | 3 of 50; 0 of 5 of 21 (Note 2) | 1 | 0 | | |
| March 1954 | 2 | 2 | 0 of 5 of 24 (Note 3) | 1 | 0 | 2 | 0 (Corrected by )Rosteck |
| September 1954 | 2 | 2 | 0 of 7 of 100 (Note 4) | 1 | 0 | 1 | 1 (4/12/60) |
| March 1955 | 3 | 3 | 4 of 100, one person called (Note 5) | 3 | 0 | | |
| September 1955 | 3 | 3 | 0 of 1 of 100 (Note 6) | 3 | 0 | | |
| March 1956 | 3 (Note 1) | 3 | (See Note 7) | 2 | 0 | 3 | (Corrected by )stipulation of (parties 4/1/60 |

Note 1. Alleged that no Negroes selected out of the "100" on the special panel for the March 1956 term. Further alleged that there had never been more than four Negroes on a petit jury panel, and that only once.

Note 2. Three Negroes on special panel of 50. A supplemental panel of 21 names was made, from which five persons were called, none of whom were Negroes. No indication of race of those not called.

Note 3. Special panel of 24, from which five persons were called, all of whom were white. No indication of race of those not called.

Note 4. Special panel of 100, from which seven persons were called, all of whom were white. No indication of race of those not called.

Note 5. Special panel of 100, four of whom were Negroes. One person.white, served from this panel.

Note 6. Special panel of 100, from which one person, white, served.

Note 7. A total of five special panels, with approximately 450 names, were selected. Apparently none were Negroes. It is uncertain how many were actually called. Fourteen on the first two special panels were called in the Bailey case. Eighteen persons from the Third Division Panel were used for the Leggett trial, none of whom were Negroes.

## V

■■ Though petitioner was not entitled to any percentage of racial representation on the jury panel which tried him, or to representation, as such, at all, there must be neither inclusion nor exclusion because of race. To comply with the Constitutional requirement as to selection of jurors, race is an irrelevant factor. Cassell v. State of Texas, 1950, 339 U.S. 282, 287, 294, 70 S.Ct. 629, 94 L.Ed. 839 (concurring opinion); Akins v. State of Texas, 1945, 325 U.S. 398, at page 407, 65 S.Ct. 1276, at page 1281, 89 L.Ed. 1692 (Murphy, J. dissenting).

The federal court, however, does not serve as supervisor of jury commissioners in the performance of their duty. The court recognizes conscious decisions must be made in any system of jury selection not based upon pure chance, that practical considerations must necessarily be heeded, and that in any large county jury commissioners must of necessity have a somewhat limited acquaintance with most of the people eligible for jury duty. In Pulaski County, the largest in the State of Arkansas, there were 64,537 holders of poll tax receipts in the year 1955, from which the March 1956 term of jurors was necessarily selected under Arkansas law.

The jury commissioners for the March 1956 term in the First Division of the Pulaski County Circuit Court testified that they selected jurors for the regular and alternate panel whom they thought to be qualified, capable and desirable, without consideration of race. They testified that they were, each of them, familiar with qualified Negroes, but did not select Negroes with the intention of having any particular number, but did select three Negroes on the regular panel.[2]

■ The precise question before the court is whether there was discrimination in the selection of the jury panel which tried and convicted petitioner. Of course, the question is not foreclosed by the answers of the jury commissioners; the discrimination alleged may be established by evidence showing disproportionate representation over such a period of time that the burden is shifted to the State to show that it is not the result of systematic limitation. Cassell v. State of Texas, and Akins v. State of Texas, supra; Avery v. State of Georgia, 1953, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244; Patton v. State of Mississippi, 1947, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76.

■ The court does not believe that the evidence offered in this case of racial representation on the jury panels in the First Division from March 1952 through March 1956 establishes such a pattern of disproportionate representation as to compel the finding that it must necessarily have been achieved through discriminatory limitation upon the basis of race.

In 1955, the poll tax year from which petitioner's jury was selected, Negroes constituted 13.3% of the poll tax holders in Pulaski County. Negroes constituted 8.33% of the regular and alternate jury panels initially selected, and 8.1% of the panel from which petitioner's jury was chosen. We do not believe that such evidence is sufficient to support a prima facie case of discrimination. In arriving at these conclusions:

(1) That there was no discrimination in the selection of the panel of the 1956 March term, and

(2) That a prima facie case of discrimination has not been made by a comparison of jury panels through a number of prior years,

2. In considering this case, the court has ignored any distinction between the regular panel and the alternate panel. Though Negroes seem to have been omitted from all alternate panels save one, in a county the size of Pulaski the panels actually serve, in effect, as one panel of 36, rather than as a panel of 24 with 12 alternates; the large number of cases tried make it almost certain that all will be called upon to serve.

the court has considered the following factors:

A. As to the special panel for the March 1956 term, the record discloses some confusion. Petitioner's Exhibit No. 1 indicates that 450 jurymen were selected, but other testimony indicates that all of these persons may not have appeared in court, and one of the special panels may not have been opened. None of the special jurors seem to have been Negroes, although the evidence is somewhat uncertain on this point; all were required initially for the Leggett case, on appeal Leggett v. State, 1957, 227 Ark. 393, 299 S.W.2d 59, tried prior to petitioner, Bailey, but at the same term of court. The record discloses that the first special panel had 50 names, the second special panel 149, and that these two panels contain the only special jurymen involved in any way in the selection of petitioner's jury.

Petitioner's jury was selected from a list of 37 jurors, seven from the first special panel, seven from the second special panel, and the remaining 23 from the regular panels. So far as is shown by the record, none of the special jurors other than the 14 just mentioned ever served again during the 1956 March term after the conclusion of the Leggett case. The only relation of these special jury panels to petitioner's case arises from the fact that these 14 jurors served as part of the panel from which his jury was selected.

Further, it cannot be said that the record supports the contention that Negroes are normally discriminated against by exclusion or limitation as regards special panels in the First, or Criminal, Division of the Pulaski Circuit Court. It is established that prior to 1956 in several of the years Negroes were called on such special panels. One of the problems in regard to these special panels is that the race of the individual jurors is usually not designated, making it impossible to determine the race of special panel members not called on to appear. Mr. Rosteck testified, referring to the special panels at the term in which Bailey was tried, that it was impossible to determine whether the jurors not reporting were white or colored, because these special lists (referring particularly to special panel number one and special panel number two) show only name, address and telephone number of the jurors, with no designation of race. The names of the jurors on special panels are put in sealed envelopes and opened only on order of the court. This is apparently not the case with the regular panels, where the race of the Negro and white jurors is in most instances indicated by the jury commissioner when the lists of such regular jurors are submitted to the court.

B. No evidence has been introduced by petitioner in support of his allegation that there was an understanding on the part of the jury commissioners, either those for the term of March 1956 or for prior terms, to limit the number of Negro jurors.

C. As has been stated, the Circuit Court of Pulaski County is divided into three divisions, each of which selects its own jury panel. The First Division tries only criminal cases, while the Second and Third handle the civil docket. One of the contentions of petitioner is that there has been an intentional and systematic exclusion of Negroes to serve on the jury panels in these civil divisions, and that 17 special jurors from the panel of the Third Division were called in one case in the First, or Criminal, Division.

It appears to be true that no Negro has been selected on any of the jury panels of these two civil divisions since 1939; however, it is undisputed that the only case that any of the jurors chosen for the civil divisions have been used in the criminal division was in the 1956 March term in the trial of Leggett, who was a white man, when 17 jurors from the Third Division were temporarily "borrowed" by the First Division for the purpose of selecting the Leggett jury. After the Leggett case, these jurors were returned to the Third Division and were not recalled to the First Divi-

sion. The record shows that this is the only instance that any jurors selected for the civil divisions have ever been used in the criminal division. The relevance of jury discrimination, if any, in the civil divisions to petitioner's case is not established.

D. Over the objection of the State, evidence of Negro representation on jury panels subsequent to March 1956 was received for its relevance, if any, in the establishment of a prima facie showing of discrimination. Petitioner presented evidence that several Negroes selected as jurors had served on more than one panel. However, only one Negro had served twice before petitioner's trial (Mr. D. B. Lacefield, in March of 1951 and September of 1955); there had been no other repetition of Negro jurors between March of 1951 and March of 1956, and none of the three Negroes on petitioner's jury panel had served prior to that term.

■ E. The failure to have Negro jury commissioners is not discrimination. Moore v. Henslee, 8 Cir., 1960, 276 F.2d 876. Nor does the court think that there is a sufficient showing of unfamiliarity with qualified Negroes to bring this case within the rule of Cassell v. State of Texas, supra. All the jury commissioners testified they have lived in Pulaski County for a long time and were acquainted with the names of many Negroes they would consider qualified if found to have a poll tax for 1955. Three of the jurors they selected were Negroes. All the commissioners were engaged in businesses which brought them into contact with Negroes. We do not understand that the familiarity with eligible jurors of all races and creed required of jury commissioners must necessarily proceed from social or personal contacts. It is the knowledge, not its source, which is important.

The court has come to the conclusion that there was no racial discrimination practiced in the selection of the jury panel which tried petitioner. Any disproportion of Negro representation on such panel or in the total group from which the panel was actually selected does not seem to have been the result of consideration of race, either in the selection or non-selection of particular jurors.

## VI

Our examination of the record has led us to the same conclusion reached by the courts that have previously considered this case. We believe that petitioner was afforded a fair trial, that his constitutional rights were observed, and that he has had a full measure of judicial review of his conviction. Judge J. Smith Henley found that Bailey was not denied a fair trial, that the trial judge appeared to have been careful to protect all of the legitimate rights of Bailey, and that his conviction was supported by the evidence. Bailey v. Henslee, D.C.E.D.Ark. 1958, 168 F.Supp. 314. The Eighth Circuit Court of Appeals held:

"We have examined the entire record with great care and are convinced that the guilt of the defendant was proved by the evidence beyond a reasonable doubt, and if the ruling denying him compulsory process for the production of the jury commissioners as witnesses was a technical denial of a Constitutional right, there is no proof that he was injured thereby, and he has clearly waived this Constitutional right * * * We are convinced that he had a fair trial."

Bailey v. Henslee, 1959, 264 F.2d 744, at pages 748–749 (Gardner, Chief Judge).

Nearly four years have elapsed since petitioner's original trial. The same question attempted to be raised by petitioner in this proceeding was first presented by him at his trial four years ago. The question now raised by petitioner was not presented to this court in his previous petition for federal habeas corpus although no reason is assigned for

this failure. We do not believe that this piecemeal presentation of alleged errors is helpful in maintaining public confidence in the administration of justice. Any defendant is entitled to utilize fully the procedures established for reviewing and correcting alleged errors in his trial, but it does not seem improper to demand that he do so in an orderly and efficient fashion. If, through ingenuity of counsel, alleged errors may be continually devised and litigated through all steps of appeal, it is difficult to see how the public interest in the efficient punishment of crime is to be served.

No additional facts have been discovered since the petitioner's original trial and no reason is shown why all of the contentions now presented should not have been long since disposed of—in fact, we think they have been disposed of. Of course, every man is entitled to a fair trial, and this precious right should be jealously guarded. However, after petitioner has had full opportunity to present his defense, and full review has been made by the appellate courts, what purpose is served by interminable delay in the final adjudication of his case? Such delays cast doubt, and some even say discredit, on the administration of justice.

### VII

It is, therefore, considered, ordered and adjudged that the order to show cause heretofore entered be, and hereby is, vacated; that the petition for a writ of habeas corpus be, and hereby is, denied; that certificate of probable cause for the appeal of the case will be denied petitioner; but that the Clerk of this Court will be ordered to supply without charge, upon request by petitioner, such portions of the record as he reasonably may require to make application for a certificate of probable cause to one of the judges of the Court of Appeals for this Circuit, or to the Court of Appeals itself, or to the Circuit Justice.