Bailey *v.* State.

5047                                          381 S. W. 2d 467

Opinion delivered June 1, 1964.

[Rehearing denied September 14, 1964.]

*E. V. Trimble* and *C. C. Mercer,* for appellant.

*Bruce Bennett,* Attorney General, by *Jack L. Lessenberry,* Chief Asst. Atty. General, for appellee.

· CARLETON HARRIS, Chief Justice. This case has been before the courts on numerous occasions,[1] and is now here for the second time on the merits. Appellant was convicted of the crime of rape, and sentenced to suffer the punishment of death. Some twenty-five assignments of error are listed in the motion for new trial, though only one of these is argued by appellant in his brief.

Four of these assignments deal with the sufficiency of the evidence. The prosecuting witness, a white woman, 49 years of age at the time of the alleged crime, testified that she retired at her home in Little Rock about 9:30 P.M., and was awakened about 12:30 A.M. by noises. As she started through the kitchen, investigating the sounds, a man caught hold of her arm; she began to scream, but he choked her and pressed a knife to her

---

[1] *Bailey* v. *State,* 1957, 227 Ark. 889, 302 S. W. 2d 796; *Bailey* v. *State,* 1958, 229 Ark. 74, 313 S. W. 2d 388; *Bailey* v. *Henslee,* D. C. Ark. 1958, 168 F. Supp. 314; *Bailey* v. *Henslee,* D. C. Ark. 1960, 184 F. Supp. 298; *Bailey* v. *Henslee,* 8 Cir., 1959, 264 F. 2d 744; *Bailey* v. *Henslee,* 1961, 287 F. 2d 936; *Bailey* v. *Arkansas,* 1957, 355 U. S. 851, 78 S. Ct. 77, 2 L. Ed. 2d 59; *Bailey* v. *Arkansas,* 1958, 358 U. S. 869, 79 S. Ct. 101, 3 L. Ed. 2d 101; *Bailey* v. *Henslee,* 1960, 361 U. S. 945, 80 S. Ct. 408, 4 L. Ed. 2d 364; *Henslee* v. *Bailey,* 1961, 368 U. S. 877, 82 S. Ct. 121, 7 L. Ed. 2d 78; *Bailey* v. *Henslee,* 8 Cir., 309 F. 2d 840.

throat. The intruder, according to her testimony, stated that he wanted some money, and she replied that she would go get the money if he would let her go. He pushed her into the bedroom, held the knife to her throat, and forcibly had sexual intercourse with her. She begged him to leave her alone and promised to give him what money and jewelry she had. She first gave him $5.00 from her billfold, but this did not appease him. As the intruder pulled up his pants, he lost his billfold, and she got matches in order for him to look for it. In the light, the prosecutrix determined that he was a Negro. He found the billfold, which she noticed was brown, with a yellow and blue Air Force insignia on it. The prosecutrix was then forced to give him her purse containing $190.00, but he would not take the jewelry, stating, "he wasn't going to take that and have somebody catch him with that." After taking the purse, the man cut the telephone line, raped her again, and then left. She immediately ran next door, and notified her neighbor, and, shortly thereafter, her daughter and the police arrived. She subsequently identified appellant, Luther Bailey, as the perpetrator of the crimes. Actually, this testimony in itself was sufficient to sustain the charge, as we have held that corroboration is not necessary in a rape case. *McDonald v. State,* 225 Ark. 38, 279 S. W. 2d 44. However, there are many additional circumstances which forcefully point to appellant's guilt. For instance, the officers found a folder on the floor at the foot of the bed, containing various identification cards bearing the name of Luther Bailey. The injuries to the prosecutrix were plainly visible, and the officers found a cut screen, muddy footprints in the house, a severed telephone line, and they also determined that the master electrical switch had been turned off. With other officers, Deputy Sheriff Mose Turner drove to Woodson, near Little Rock, where Bailey lived, and went to his home. The officers arrived there between 2:30 and 3:00 A.M., but Bailey's wife reported that he was not at home. All of the officers then left except Turner and one other officer, who remained at the house for over an hour. Subsequently, Turner left to locate a telephone, and, while driving north toward

Little Rock, the officer met Bailey, who was traveling south. Turner recognized him, turned around, and had Bailey stop the car at Woodson. A search of Bailey's person revealed $133.00 in bills, together with a man's billfold bearing an Air Force insignia. An examination of his automobile revealed, *inter alia*, a paring knife, found in the glove compartment, and a ladies' purse, found under the front seat. In the purse were some check stubs, car keys, pictures, and women's hair clamps, and the check stubs bore the name of the prosecuting witness. It is evident that the testimony was more than adequate to sustain the conviction.

Only three points are argued in the brief, these being, first, that Negroes were intentionally, deliberately, and systematically limited in the selection of the petit jury panel; second, that Negroes have been excluded from serving as jury commissioners for the past 50 years;[2] and third, that Bailey was not retried within nine months as ordered and directed by the United States Eighth Circuit Court of Appeals.

The record does not reveal any objection interposed to the jury, but if otherwise, we certainly could not say error was committed as urged, since no motion to quash the panel was filed. The only reference to the jury was just prior to the *voire dire* when the defense counsel requested a subpoena *duces tecum* for the record and length of service of the jury panel during the term of court. This information was then supplied after which the defense requested a drawn and struck jury, and the names were placed in the box and drawn from the box. The record is absolutely barren as far as any other reference to the jury is concerned, except for the names of those who served on the trial jury. There appears no examination of jury commissioners, or of members of the petit jury panel. It would therefore appear that appellant must have been satisfied with the jury, else a record would have been made for the purpose of establishing discrimination.

---

[2] These two points were not raised in the motion for new trial.

We are unable to understand the reason for the remaining point argued by appellant, since this question has been clearly answered contrary to the contention made. In *Bailey* v. *Henslee,* 8 Cir., 1961, 287 F 2d 936, 938-939, the Circuit Court of Appeals for the Eighth Circuit held that Bailey had established an unrebutted *prima facie* case of limitation of members of his race in the selection of the jury which convicted him at the original trial. The opinion of the court concluded as follows:

"The State of Arkansas is entitled to a reasonable time within which to retry this defendant for the crime charged against him. Pending a retrial by the State, the District Court is directed to grant a stay of execution. If he is retried, the Court is directed to enter a dismissal of Bailey's present petition for release on habeas corpus. If he is not retried within nine months from the filing date of this opinion, the District Court is directed to grant Bailey's petition for a writ of habeas corpus."

The case was then remanded for further proceedings and the opinion of the court was filed in the office of the clerk of the Circuit Court of Appeals on March 17, 1961. A petition for rehearing was thereafter filed by Henslee[3] and denied on May 4, 1961. Thereafter the mandate was sent down to the district court and was received on May 17, 1961.

That court, in compliance with the opinion and mandate, issued its order for stay of execution, and further stated:

"Provided, however, that if Petitioner is retried within nine months from May 17, 1961, the filing date of said opinion of the Eighth Circuit Court of Appeals in the clerk's office of the United States District Court for the Eastern District of Arkansas, for the crime of rape allegedly committed by him in Pulaski County, Arkansas, on or about June 15, 1956, respondent may apply to this court for dismissal of this petition for a writ of habeas corpus and this stay of proceedings:

---

[3] This refers to the late Lee Henslee, former Superintendent of the Arkansas State Penitentiary.

"Provided, further, that should Petitioner not be retried within said period, writ of habeas corpus will then be granted."

The Pulaski County Circuit Court, after earlier appointing counsel to replace Bailey's counsel who had moved out of the state, set the second trial for January 29, 1962, and the trial did commence on that date. On the same day that the Circuit Court set the case, Bailey's attorneys filed in the Federal District Court for the Eastern District a "Petition for Writ of Prohibition and Mandamus," and the next day filed an application for a writ of habeas corpus. The grounds asserted in both applications were that Bailey was not retried within the time specified by the Circuit Court of Appeals, since the nine month period "from March 17, 1961, had expired on December 17, 1961." The application was denied by the District Court, and this action was upheld by the Circuit Court of Appeals. After discussing the matter somewhat at length, that court, in *Bailey* v. *Henslee,* 309 F. 2d 840, said:

"Our opinion could not operate to command any legal action in the proceedings until it ripened into a judgment formally communicated to the district court. It then follows, it seems to us, that the nine month period ran only from the date our mandate and opinion were filed with *that court.* Then and only then did they become effective. Then and only then did formal notice come to the district court of the result of the appeal to this court. Then and only then did the stay terminate which, under Rule 38 (a) (1), F.R. Cr.P., was in effect pending the appeal. Compare also Rule 35, F.R. Cr.P. The opinion, of course, was made available earlier to counsel under this court's Rule 14 (c) and to the district court when copies of the "slip opinion" were routinely delivered to them. Similarly, our judgment was entered in our own records under our Rule 14 (b) on the date it was filed with our clerk. But this court, as does any appellate court, acts formally and officially only through its mandate. * * * We therefore construe our mandate to the effect that the designated period runs from the

date of the filing of the mandate and opinion with the district court. * * * The beginning date in this case was thus May 17, 1961. The record shows that the second state trial began well within nine months from that date. The denial of the current application for the writ of habeas corpus was, as a consequence, proper.''

Assignment 7 of the motion for new trial relates to a motion for a change of venue. Appellant filed a petition for change of venue and set up that he had caused subpoenas to be issued to several persons, ''all of which are qualified electors in this county and are in a position to know the general opinion of the public to testify in support of this motion.'' The petition further requested that if the evidence offered was deemed insufficient, ''the court would direct the Sheriff of Pulaski County to immediately go upon the streets of Little Rock, Arkansas, immediately preceding the said hearing and summons the first six (6) qualified electors that he meets to the end that they may be interrogated as to their opinion of the defendant's chances to procure a fair and impartial trial in Pulaski County, Arkansas.'' The court complied with this motion, although the application of appellant for a change of venue was not made in compliance with the statute. Ark. Stat. Ann. § 43-1502 (1947) requires that two credible persons, qualified electors and residents of the county, unrelated to the defendant in any manner, shall make an affidavit setting forth the facts which are relied upon for a change of venue. However, in *Hildreth* v. *State,* 214 Ark. 710, 217 S. W. 2d 622, we held that it was proper for the court to hear evidence in order to make a determination, even though affidavits were not presented. See also *Trotter and Harris* v. *State,* 237 Ark. 820, 377 S. W. 2d 14.

The motion being granted, the court proceeded to hear the testimony of the Sheriff of Pulaski County, two deputy sheriffs, two newspaper reporters, the publisher of the ''Southern Mediator Journal'' (circulation mainly among the colored population), the Chief of Police of Little Rock, the Chief of Police of North Little Rock, and seven witnesses at random selected by the sheriff at the

request of appellant. Of all the testimony taken, no one testified that, in his opinion, appellant could not receive a fair trial, and only one, C. H. Jones, expressed any doubt whatever. When asked if he thought appellant could obtain a fair trial in Pulaski County, this witness answered, "I should think so. I should think he should get a fair trial—I underscored that, you know, I know a case of that kind is very delicate. * * * If it was another county where there was a mixture of citizens, it would be better." Let it also be remembered that this alleged crime was committed in 1956, and the passage of such a long period of time would certainly operate to appellant's advantage. Outraged feelings and hot tempers in the community (if indeed such sentiment existed) would certainly tend to cool in six years. We find no abuse of discretion in the trial court's refusal to grant the motion.

Assignment 25 (amendment) of the motion for new trial asserts that the death penalty for rape has been unconstitutionally applied, in that it is reserved for use solely for Negroes charged with raping white women.[4] No motion, written or oral, was offered prior to, or during the trial, and there was no proof or offer of proof on this point before the trial court. This point has been raised before in this state, and we have held contrary to appellant's contention. See *Maxwell* v. *State*, 236 Ark. 694, 370 S. W. 2d 113.

It is urged in Assignment 16 that the trial court erred in permitting the introduction into evidence of certain items, *viz*, the identification folder, the knife, the money found on Bailey, the brown billfold, and the prosecutrix' purse. These articles were identified by several witnesses, and, in fact, no objection was made at the time when one officer identified the items. At any rate, the items were admissible evidence to establish a

---

[4] In his amendment, appellant asserts, "no white man has ever been electrocuted for rape on any woman, white or colored." Without any research whatsoever, it can quickly be stated that this statement is erroneous. In *Fields* v. *State*, 235 Ark. 986, 363 S. W. 2d 905, Fields, a white man, was convicted of rape, and sentenced to death. We affirmed the conviction on May 27, 1963, and Fields died in the electric chair January 24 of this year. See also footnote 1 in *Mitchell* v. *State*, 233 Ark. 578, 346 S. W. 2d 201.

connection between appellant and the crime. See *Grays v. State,* 219 Ark. 367, 242 S. W. 2d 701.

Assignment 9 relates to the testimony of Charles L. Pitts, who testified that the prosecuting witness appeared to have bruises and scratches on her throat and body. There was no error in admitting this testimony. *Snetzer* v. *State,* 170 Ark. 175, 279 S. W. 9.

Assignment 11 asserts that the trial judge erred by admitting evidence obtained by Deputy Sheriff Turner, because (as it is contended) the arrest of Bailey was illegal. This argument is based on the fact that no warrant of arrest had been issued for the appellant, and it is contended that the evidence subsequently acquired was obtained illegally. Ark. Stat. Ann. § 43-403 (1947) provides that a peace officer may make an arrest without a warrant where he has reasonable grounds for believing that the person arrested has committed a felony. Of course, as heretofore pointed out, after finding Bailey's identification folder at the scene of the crime, there were certainly reasonable grounds to form the belief that he had committed the act. Let it also be remembered that Bailey was arrested during an early morning hour when it would have been extremely difficult to present the matter to a magistrate.

It seems to be well established that evidence found upon a person legally arrested may be used against him. As stated in 20 Am. Jur. § 401, Page 361:

"It is a well-established principle of our criminal law, that evidence of guilt found upon a person under legal arrest for a crime may be used in evidence against him."

With regard to the articles found in the automobile after Bailey was placed under arrest, it is pointed out in Volume 1 of Searches, Seizures and Immunities, Section 5, Page 104, "The general rule of law is that when a man is legally arrested for an offense, whatever is found on his person or in his control which it is unlawful for him to have and which may be used to prove the offense, may

be seized and held as evidence.'' Further, on Page 105: ''The law is well established that searches may be permitted as an incident to a lawful arrest without warrant, and this rule of law prevails throughout the country.'' A similar view is taken in Volume 79, C.J.S., Searches and Seizures, Section 69, 847. It is important to remember that the evidence obtained from the automobile (the knife and the ladies' purse containing articles belonging to the prosecuting witness) was evidence connecting Bailey with the crime for which he was being sought, and with which he was subsequently charged, rather than evidence of some offense committed on some other occasion[5] of which the officer had no suspicion.

Assignments 12, 14, 17 and 19 relate to alleged error in permitting several of the officers to testify relative to statements made by the appellant. Each officer testified that appellant was advised of his rights, was not abused in any manner, and that the statements made were free and voluntary on the part of the accused. These same assignments were urged as grounds for reversal in the first trial, and we rejected the contentions as being without merit. *Bailey* v. *State,* 227 Ark. 889, 302 S. W. 2d 796. In addition, the entire transcribed statement was read into evidence upon the request of counsel for appellant.[6]

Assignment 18 relates to the introduction of photographs. This contention, too, was urged in the first trial, but was likewise held to be without merit. *Bailey* v. *State, supra.* The same applies to Assignment 21, wherein appellant asserts that his witness, Irene Wright, should have been permitted to testify that the prosecutrix had telephoned Bailey on several occasions. In disposing of this contention, in the first case, this court stated:

''In Assignments 17 and 18, appellant challenges the correctness of the court's striking the testimony of Irene Wright. She testified that appellant lived close to her

[5] In fact, the evidence also connected appellant with lesser crimes committed, under the evidence, during the same period of time as the rapes, *i.e.,* burglary, larceny, and robbery.

[6] This was likewise done in the first case.

and that she had received several telephone calls for him from a person who identified herself as the prosecuting witness. She did not know the prosecutrix and was not sure that the voice was that of a white woman. We think this testimony was properly excluded for the reason that the identity of the person who talked to the witness over the telephone was not satisfactorily identified. 'Generally, in order to introduce evidence of a telephone conversation or communication, otherwise unobjectionable, the identity of the person, who is claimed to have talked over the telephone, must first be satisfactorily established by the party seeking the introduction of the telephone conversation. To hold one responsible for statements and answers made over the telephone by unidentified persons would open the door for fraud and imposition,' 20 Am. Jur., Evidence, §366, P. 344.''

In fact, most of the assignments of error relied upon were considered by this court on appeal following the original conviction on the charge, and the United States Supreme Court denied *certiorari*. 355 U. S. 851.

By Assignment 22, it is asserted that the trial court erred in giving certain instructions. With the exception of one instruction, only a general objection was made. We have held that it is appellant's duty by specific objection to point out the error in any instruction, and a general objection is only sufficient if the instruction is inherently erroneous. *Rutledge* v. *State*, 222 Ark. 504, 262 S. W. 2d 650. None of the instructions given were inherently erroneous. Specific objection was made to Instruction No. 2 on the basis that the statement made by appellant was not free and voluntary in that Bailey had been in the custody of the officers ''five or six hours without having his constitutional rights explained to him or without having the benefit of counsel.'' Several witnesses testified that the admissions were made freely and voluntarily, and it will be remembered that Bailey's entire statement was read to the jury at the request of appellant. We thus find no merit in this contention.

The defendant requested that the court give the jury an instruction on assault with intent to rape, which the

court refused to do. Testimony on the part of the prosecuting witness was that she was twice raped; testimony on the part of the defendant was that he did not have intercourse with the prosecutrix, nor did he attempt any such act. In the statement offered by appellant (made a few hours after the offense had been committed), Bailey stated that he did have intercourse with the prosecuting witness, but with her consent. In either event, it is clear that there was no testimony by either the state or the defendant that only an assault had been made. Under the evidence, appellant was either guilty of rape—or he had committed no sexual offense whatsoever. Accordingly, there was no error in refusing to give this instruction. *Whittaker* v. *State,* 171 Ark. 762, 286 S. W. 937; *Needham* v. *State,* 215 Ark. 935, 224 S. W. 2d 785.

In assignment 24, it is argued that the penalty was excessive. In *Rorie* v. *State,* 215 Ark. 282, 220 S. W. 2d 421, we said:

"Finally, appellant's counsel asks this Court to 'exercise its constitutional power and reduce the death sentence to life imprisonment.' Among other cases, we are cited to *Blake* v. *State,* 186 Ark. 77, 52 S. W. 2d 644, in which case this Court modified the judgment from the death sentence to imprisonment. When this Court finds that the evidence is insufficient to support the punishment assessed, then we have the power to modify the punishment. Our cases clearly reflect, however, that this modification is done, not on a basis of judicial clemency, but only in a case in which the evidence would not sustain the higher punishment assessed. In the case at bar we find the evidence sufficient to support the jury verdict."

The quoted statement likewise applies to the instant case.

Other errors are asserted in the motion for new trial, and some objections were made to certain testimony during the course of the trial which were not included in the motion. Since this is a capital case, we have explored the record, and given consideration to each objection made by appellant, as well as each assignment of error.

Finding no prejudicial error, the judgment is affirmed.

MR. JUSTICE HOLT disqualified.